McCALEB, Justice.
Appellant, formerly an officer of the New Orleans Police Department, and a Negro named James Willard King were charged in a bill of information with the commission of simple burglary of a residence owned by one Natt Greenblatt, located at 4101 Ven- *877 dome Place in the city of New Orleans. Appellant moved for and was granted a severance and, following a trial, he was found guilty by a jury and sentenced by the court to serve six years at hard labor in the State Penitentiary. During the proceedings, appellant reserved five bills of exceptions and, on this appeal, he is relying on three of these bills for a reversal of his conviction.[1] These three bills, Nos. 1, 2 and S are to be considered together [2] as all relate to the admissibility in evidence of certain physical objects seized by the investigating officers in connection with an alleged illegal search of appellant’s home on August 3rd and 4th 1960 prior to his arrest, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States under the “Exclusionary Rule” which has been held to apply to trials in the State courts by the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
The investigating officers did not have a search warrant for appellant’s home nor was appellant under arrest on the three occasions when they seized the items of property which were admitted in evidence. However, the State contends that the officers did not violate appellant’s constitutional right of security in his home against unreasonable searches and seizures because appellant invited the officers into his home and unequivocally consented to the seizure of the personal property which he, himself, pointed out to them.
The undisputed facts pertaining to this issue, as shown by the record, are as follows: On August 2, 1960 James Willard King was apprehended while he was attempting to burglarize the building of Blue Plate Food Products Company in the city of New Orleans. After his arrest, King was questioned by the city police and he confessed to a series of burglaries. He also told the police that, since April 1960, he and appellant had been partners in crime, having worked as a team in the commission of burglaries at various stores and homes in New Orleans, among which was the residence at 4101 Vendóme Place from where he, King, having become frightened, fled following the burglary there, leaving appellant’s 1951 Pontiac automobile parked on Walmsley Blvd. next to said residence. Upon obtaining this information from King, Major William McNamara, Chief of Detectives, and Officer Lawrence Viguerie drove to appellant’s home at 8707 So. Claiborne Avenue on the following day (August 3, 1960) for further investigation. Upon. their arrival, appellant was in the side yard of his home. The officers immediately told him that King had been arrested the night before and had implicated appellant in eight burglaries. Major McNamara inquired of appellant whether he had anything in his house which King had given him and appellant replied that he had some articles belonging to King which he was holding as collateral on an automobile he had sold King. The police officers then asked if they could see the articles and appellant consented and invited them into his house where he showed them some of the things which he said King had given him to hold as security for the purchase price of the automobile he had sold King. On this visit the officers, with appellant’s apparent consent and approval, took possession of and carried off a television set, a movie camera, a 22 caliber rifle and a radio. At the same *878 time, they brought Pennington with them to police headquarters for further questioning. Later in the day, Officer Viguerie and Vogt, accompanied by appellant, returned to the latter’s residence and seized a clock radio and movie projector which had been stolen in the burglary at 4101 Vendóme Place. On this occasion, appellant continued to assist the officers by identifying the objects which he had gotten from King but, at the same time, he was insisting that King had turned over all of these movables as security for payment of the purchase price of the automobile he had sold to King.
The following day, August 4th, Officers Viguerie and Vogt again returned with appellant to his home and, with his consent, seized a movie camera, hi fi and binoculars which had also been stolen from 4101 Ven-dóme Place. As on all other occasions, appellant told his fellow officers that these articles had been brought to him by King as security and in payment for the automobile.
In ruling that the articles taken from appellant’s home without a search warrant were admissible, the trial judge sustained the State’s position that appellant had waived his constitutional right by specifically and unequivocally consenting to the seizure. Counsel for appellant argues that this ruling was incorrect for three reasons; (1) that it was improper to take the articles without a search warrant when it was practicable for the investigating officers to have obtained a warrant as it does not appear that there were any reasonable grounds for believing that the evidence to be seized would have been removed before such warrant could have been secured; (2) that appellant’s alleged acquiescence to the search was not such as to constitute a waiver of his constitutional rights and (3) that, in any event, the seizure must be held illegal, since it was made for the purpose of obtaining evidence with which to make an arrest.
We find no substance in the first and third propositions advanced by counsel. It is well settled in the Federal courts that the right established by the Fourth Amendment to be secure in one’s person and effects against unreasonable searches and seizures may be waived and, when unequivocal consent is given, the search cannot be regarded as unreasonable or in violation of the constitutional guarantee. See Searches & Seizures, 47 Am.Jur. 571, Section 71, Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Underhill “Criminal Evidence” Vol. 2, p. 1073, Sec. 416, 5th Ed. (1956); Varón, “Searches, Seizures, and Immunities”, Vol. 1, pp. 466-488 and United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. Obviously, the securing of a warrant is unnecessary where consent to the search has been freely given. Likewise, as long as no constitutional right has been violated, it is wholly immaterial that the purpose of the search is to obtain evidence against the person consenting thereto so that an arrest could be made.
Accordingly, this leaves for consideration the question whether the State has shown, by clear and convincing evidence, that appellant’s consent to the search was freely and intelligently given. The principles governing the Federal courts, which are applicable here in determining whether the consent to a search is such as to warrant a holding that the complaining party has waived the constitutional right granted by the Fourth Amendment, have been well stated by the United States Circuit Court of Appeals, Second Circuit, in United States v. Smith, 308 F.2d 657 (1962), thus:
“ * * * When an accused consents to a search or seizure conducted without a search warrant, the protection he would have enjoyed under the Fourth Amendment is lost to him. United States v. Bianco, 96 F.2d 97 (2 Cir. 1938); United States v. Shules, 65 F.2d 780 (2 Cir. 1933). However, an accused’s voluntary consent must be proven by clear and positive evidence. A consent is not a voluntary one if it is the product of duress or coercion, actual or implicit. Moreover, to be voluntary. *879 a consent must have been unequivocal, specific, and intelligently given. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651 (1951); See Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Karwicki v. United States, 55 F.2d 225, 226 (4 Cir.1932) (per curiam); Kovach v. United States, 53 F.2d 639 (6 Cir. 1931) (per curiam); United States v. Kelih, 272 F. 484, 490-491 (S.D.Ill.1921).
“But the case-by-case application of these principles is not always easy. The line between an accused’s voluntary consent and his involuntary submission to police authority is often difficult to draw. Though all the cases involving the legality of warrantless searches and seizures are not fully reconcilable, some guidelines are discernible. When a law enforcement officer knocks at the door, identifies himself, and asks to be allowed to search the premises, the acquiescence thus obtained is generally not considered to be voluntary consent. See Judd v. United States, supra; United States v. Marquette, 271 F. 120 (N.D.Cal.1920), appeal dismissed, 270 F. 214 (9 Cir. 1921); United States v. Slusser, 270 F. 818 (S.D.Ohio 1920); United States v. Marra, 40 F.2d 271 (W.D.N.Y.1930). Likewise, if the defendant denies his guilt, asserts that the police will find nothing (perhaps hoping that the contraband is too well concealed for discovery), and ‘encourages’ the officers to search the premises, even then it has been held that there has been no voluntary consent to the ensuing search. See Channel v. United States, 285 F.2d 217 (9 Cir. 1960); Judd v. United States, supra; Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954). But see United States v. Adelman, 107 F.2d 497 (2 Cir. 1939). In the Higgins case it was stated, 209 F.2d at 820: ‘(N)o sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered.’
“On the other hand, if the defendant permits a warrantless search of his home or establishment in the mistaken belief that he has nothing there which will incriminate him, it has been held that the search has been voluntarily consented to. United States v. DeVivo, 190 F.Supp. 483 (E.D.N.Y.1961); United States v. Dornblut, 261 F.2d 949 (2 Cir. 1958), cert. denied, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959). * * *”
We think the case at bar falls squarely within the principle of law set forth in the last paragraph of the foregoing quotation. The evidence clearly shows that appellant not only consented to the search of his home by the investigating officers— he actively assisted the officers in locating in his home the articles he had received from King which had been taken in the Vendóme Place and other burglaries. His motive in this disclosure is evident to us. He unquestionably harbored the belief that these articles would not incriminate him and he would have been right in this deduction had his fellow officers accepted as true his explanation as to the nature of his possession. Moreover, he evidently thought that he had a good defense to the incriminating charges which King had made against him. That defense was, of course, that the stolen articles had been turned over to him by King, not as part of the spoils of the burglaries, but as security or payment for the automobile which appellant had allegedly sold King.
We conclude that appellant waived his constitutional right by giving his unqualified consent to the search and seizure and that, therefore, the articles taken from his home by the police officers were properly received in evidence.
The conviction and sentence are affirmed.

. Bills Nos. 3 and 4 have been abandoned by counsel for appellant in this Court.

. Bill No. 1 was taken to the overruling of a motion to suppress the admission in evidence of the objects taken by the investigating officers from appellant’s home on two occasions on August 3rd and on the following day, August 4th, 1960.
Bill No. 2 was reserved to the ruling of tlie district court that these movables were admissible in evidence and Bill No. 5 relates to the overruling of appellant’s motion for a new trial in which he reiterated the alleged error committed by the court in receiving the personal property in evidence over timely objection.