177 So.2d 115

**STATE of Louisiana**

**v.**

**Glenn TURNER and Nolia Anslum.**

**No. 47691.**

July 2, 1965.

Ernest A. Kelly, Houma, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Wilmore J. Broussard, Jr., Dist. Atty., for appellee.

SUMMERS, Justice.

Under an indictment for burglary the defendants, with one Dennis O'Quinn, were jointly tried and convicted. Only the appeal of Glenn Turner and Nolia Anslum are before us, O'Quinn having dismissed his appeal to start serving his sentence.

One issue is presented by this appeal: Whether the accused consented to the search of their clothing and Turner's automobile; the search having been made without warrant.

The issue is brought before us by a bill of exceptions taken to the ruling of the trial judge denying a motion to suppress evidence taken from the clothing and automobile of the accused.

On Sunday morning, May 24, 1964, at approximately two o'clock, local law enforcement officers in Houma observed an unknown person running in the rear of the Sundberry Shopping Center located on West Main Street. This unknown person aroused their suspicion, because there had been numerous burglaries in the neighborhood before, but he disappeared into a nearby lumber yard before he could be apprehended. Other officers were summoned to the scene to help in the search of the area.

Two of the police officers, responding to the request for assistance, upon arriving at the Sundberry Shopping Center, observed a 1954 Chevrolet automobile with three occupants parked on Andrew Street immediately behind the National Food Store located in the shopping center. The car was driven away before the officers could identify the occupants. However, the officers noted the description of the car and obtained the license number. Later it was determined that the vehicle belonged to the defendant Turner.

Approximately two hours later, this same automobile was seen traveling on Main Street in front of the shopping center. The officers followed the car and when the driver turned on Andrew Street to pass behind the National Food Store, where they had parked earlier, the car was stopped and the occupants, the defendants and O'Quinn, were questioned concerning their reasons for being there. When no satisfactory explanation was given, they were "frisked" and the trunk of their car was searched, Turner consenting to the search and opening the trunk with his key. At this time the officers observed a scratch on dusty objects in the car trunk indicating that something

had been dragged across the trunk floor recently. Defendants were then arrested for vagrancy, taken to police headquarters and incarcerated. Their automobile was parked near the police station and locked.

Later that morning, about eight o'clock, a watchman employed at the Sundberry Shopping Center discovered and reported finding two grass sacks, a quantity of cylinders and tools hidden in the grass behind the National Food Store. Investigation revealed the store had been forcibly entered and a safe in the manager's office had been broken into and approximately $375.00 stolen therefrom.

Among the various items found hidden in the grass behind the store was a money bag containing the money taken from the safe.

Under interrogation, all three defendants signed written statements admitting they were parked behind the National Food Store when their car was first spotted by the police officers at two o'clock in the morning, but they denied any implication in the burglary.

They were then arrested for burglary.

The accused were asked to submit to a polygraph (lie detector) test, but they refused. Turner was then asked if he would let the police take his car to Baton Rouge to the state crime lab to be examined by chemists there. His reply was, "I have nothing to hide. Take it on up there. You had better watch the oil, it burns oil." They also consented at that time to permit their clothes to be brought to the crime lab for examination.

The lab technicians, by vacuum cleaning the car and their clothing, obtained gleanings and a small paint sample which constituted the incriminating evidence which was sought to be suppressed.

▬ It is well settled in the Federal Courts and in our jurisprudence that the right to be secure in one's person and effects against unreasonable searches and seizures may be waived, and, when unequivocal consent is given, the search cannot be regarded as unreasonable or in violation of the constitutional guarantee contained in the Fourth Amendment of the Federal Constitution or in Article I, Section 7 of the Louisiana Constitution. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); State v. Pennington, 244 La. 650, 153 So.2d 876 (1963); 47 Am.Jur., Searches and Seizures, § 71.

▬ As this court said in State v. Pennington, supra:

"Obviously, the securing of a warrant is unnecessary where consent to the search has been freely given. Likewise, as long as no constitutional right

has been violated, it is wholly immaterial that the purpose of the search is to obtain evidence against the person consenting thereto so that an arrest could be made."

Thus, as in the Pennington case, this leaves for consideration the question whether the State has shown, by clear and convincing evidence, that appellants' consent to the search was freely and intelligently given, and, if that is found to be a fact, the protection they would have enjoyed under the Federal and State Constitutions is lost to them.  State v. Pennington, supra; United States v. Bianco, 96 F.2d 97 (2d Cir. 1938); United States v. Shules, 65 F.2d 780 (2d Cir. 1933).

■  And when an accused denies his guilt and permits a warrantless search of his automobile or clothing in the mistaken belief that he has nothing there which will incriminate him (as in this case), it has been held that the search has been voluntarily consented to.  State v. Pennington, supra; United States v. Dornblut, 261 F.2d 949 (2d Cir. 1958), cert. denied, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959); United States v. De Vivo, 190 F.Supp. 483 (E.D.N.Y.1961).

The case at bar falls within these principles of law.  The evidence on the motion to suppress was clear and convincing and verified by the testimony of the two police officers who were present when consent was given.  No effort was made to rebut this testimony.

The convictions and sentences are affirmed.