235 So.2d 72

STATE of Louisiana

v.

Charles R. WELCH.

No. 50090.

May 4, 1970.

2

---

Jerry A. Oubre, New Iberia, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., for plaintiff-appellee.

1. The record does not affirmatively show what happened to the charge against Hess. It does appear, however, that he

McCALEB, Justice.

On May 2, 1968, appellant, Charles R. Welch, was indicted by the Grand Jury for the Parish of Iberia with one William L. Hess and Bobby Gene Powers for simple burglary of a residence belonging to Mrs. Ivy Bailey in violation of R.S. 14:62. Prior to trial Powers pleaded guilty.[1] Appellant, represented by his court-appointed attorney, moved to suppress certain evidence in possession of the State on the ground that it had been obtained by means of an illegal search and seizure. After a hearing, this motion was denied by the district court. Later, on January 20, 1969, appellant was tried by a jury on his plea of not guilty, was found guilty as charged and sentenced to serve forty months at hard labor in the state penitentiary. He has appealed, relying on four bills of exceptions for a reversal of his conviction.

Bills Nos. 1 and 2 relate to appellant's claim that certain items of property were taken in an unreasonable search and seizure of his premises by the deputy sheriffs without a search warrant and without his consent in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Specifically, Bill No. 1 was reserved when the court denied appellant's motion to suppress certain physical evidence, i. e., portions of meat, personal

testified as a witness for the State at appellant's trial.

clothing and household equipment which had been taken by the burglars from the residence of Mrs. Bailey. And Bill No. 2 was taken during the trial of the case when these items, including a television set, were introduced in evidence over defense counsel's objection.

The State admits that the officers did not have a warrant to search the premises appellant and his wife were jointly occupying with Hess. However, at the trial on the motion to suppress, it claimed that the search and seizure was not unreasonable since appellant and the other concerned parties voluntarily consented to the search and, indeed, assisted the officers in securing the items of physical evidence which were later introduced at the trial.

It appears from the record that Bobby Powers, who had been previously arrested for another burglary and who was in the custody of the two officers conducting the search, was appellant's principal witness at the trial of the motion to suppress. Appellant, strangely enough, did not appear, (his presence was waived under Article 834 C.Cr.P.), and the only person who gave probative evidence on his behalf was Bobby Powers.[2]

The testimony of Deputy Haik, who testified for the State, and Powers reveals that there had been a burglary of a place of business called "Movible Offshore" (the location of this business is not clearly disclosed by the evidence), wherein certain equipment, including a tire, an air temperature gauge, a sweater and a coat (belonging to one of the company's employees) had been stolen. A warrant for the arrest of Powers had been secured, and officers of St. Mary Parish, ascertaining that Powers was working on a movable drilling rig, had Powers brought in to Franklin, Louisiana by helicopter where he was jailed. Shortly thereafter, the St. Mary Parish officers transported Powers to the Iberia Parish line where he was placed in the custody of Officers Haik and Robicheaux of Iberia Parish. Upon his transfer to Iberia Parish, Powers requested the officers take him to Jeanerette, where he had previously lived with Welch and Hess, for the purpose of securing his personal belongings which he had left at the

---

2. A man named Joe Singleton, who operated a pool room in Jeanerette, Louisiana situated across the street from the house which Welch, his wife and Hess were occupying, also testified. However, as found by the district judge in his ruling, Singleton's testimony is of little value in determining the issue for decision on the motion to suppress. He simply testified that he had permitted Welch and Hess to occupy the premises, which he (Singleton) had leased, and that he had gone to the premises while the search for stolen goods was being conducted apparently by the occupants, Welch and Hess, in conjunction with the two deputy sheriffs and Powers. He was unable to say whether consent for the search had been first obtained from Welch, but he negatively stated that there was no reference anent consent while he was present.

abode when he departed. The officers complied and, upon reaching the house where Powers had stayed with appellant and Hess, they were informed that appellant, his wife and Hess had moved to a residence on Main Street across the street from the Playhouse Pool Hall.

Powers testified that he had left some clothes and a duffle bag with appellant and Hess, and he was desirous of retrieving it. And it is clear from his testimony that he freely consented for the officers to search for his personal belongings. When Powers, accompanied by the two officers, reached the dwelling on Main Street, they went to the porch on the rear of the building where the wife of appellant was standing. Powers says that, as they approached, he gave a sign to appellant's wife that he was accompanied by the police, and then she immediately left, stating that she would go over to the pool hall and get her husband and Hess. Thereafter, Hess and appellant returned, accompanied by Officer Robicheaux. When they appeared, according to Powers' testimony, one of the deputys stated, "We've got some stuff missing. Would you mind helping us look for it?" and appellant replied, "Yes, * * * we're going ahead and help you." [3]

The only difference between this testimony and that of Officer Haik is that the latter states that, when appellant and Hess came from the pool hall, they were told by the officers they wanted to search the place and requested permission, otherwise they, the officers, would secure a search warrant as they believed that some of the stolen goods were there, and further affirms that he and Officer Robicheaux remained on the back gallery and did not enter the house until appellant's consent was secured. He says, "They told us it would be all right."

The trial judge gave cogent reasons for his holding that the State had carried the burden of proof since appellant and Hess had freely consented, not only to the search of the premises, but also volunteered to help the officers in locating the stolen goods. The judge declared that, at the time of the search, Powers was under arrest in custody of the officers and, at that time, he was the only party suspected of being involved in the burglary of and theft from Movible Offshore. Hence, since Hess and Welch were not then suspected as either accomplices or principals, there was no reason for them to withhold consent to the search. Conversely, it was to their interest for the officers' attention to have been

---

3. Although Powers' statement varies somewhat as to whether the search had begun before appellant and Hess gave their consent, he admitted finally under cross-examination that the only items of personal property examined by the officers prior to the time appellant and Hess returned to the house was "my duffle bag and my box of clothes" with his (Powers') consent.

focused on the Movible Offshore burglary, and it was for this reason that appellant pried open the trunk of his car where the tire taken in the Movible Offshore burglary was found. However, during the examination of appellant's car, the officers observed on the inside, without opening any of its doors, a blanket marked with the letter B, thus indicating that it might also be property taken in another theft.

■ The law of this State and elsewhere is well settled that only *unreasonable* searches and seizures are protected by the Fourth Amendment to the Federal Constitution and Section 7 of Article I of the Louisiana Constitution and that, when the State relies on consent to establish reasonableness of the search, the burden is on it to show by clear and convincing evidence that such consent was given freely and voluntarily. See State v. Turner, 248 La. 141, 177 So.2d 115 (1965), and State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), and the many authorities cited in these cases. In the instant matter, we think the district judge properly found that the State has carried the burden of showing that the consent to the search was given freely and voluntarily and, accordingly, Bills Nos. 1 and 2 are untenable.

■ While Mrs. Bailey, the victim of the burglary was testifying for the State, she was shown a television set and asked if she could identify it as the set which had been taken from her home. She first stated positively that she knew the set was hers and named the dealer from whom it was purchased. Subsequently, she weakened her testimony somewhat by stating that it looked like her television set. Whereupon, the State offered to introduce the television set in evidence, and defense counsel objected on the ground that the set had not been sufficiently identified. The judge sustained this objection in part and, at this time, he instructed the jury that it was entitled to give whatever weight it believed proper to Mrs. Bailey's testimony that she owned a set similar to the one tendered in evidence. Counsel then objected to this instruction, and reserved Bill of Exceptions Nos. 3. He contends here in brief that, since the television set had not yet been received in evidence, the instruction to the jury was erroneous.

The bill is insubstantial. If any error was committed by the judge, it was his failure to receive the television set in evidence at the time it was offered, because the testimony attached to the bill clearly shows that Mrs. Bailey identified the set as the one stolen from her home. In any case, the instruction to the jury was not improper as Mrs. Bailey's subsequent statement, that the set looked like her set, was clearly admissible. Whether the set, which was later received in evidence, was Mrs. Bailey's television is a matter which addressed itself to the weight of the testi-

mony of the witness, and not its admissibility.

While Hess, one of the accused, was testifying for the State, he was asked on cross-examination by defense counsel whether or not appellant appeared to him (Hess) obviously drunk. When the State objected to this question on the ground that it called for a conclusion or an opinion of the witness, it was sustained by the court. Defense counsel then reserved Bill No. 4.

In upholding the objection, the judge was of the view that the question as framed by counsel called for the giving of an opinion by the witness, and he stated in so ruling that the witness would be allowed to testify to facts that he saw but not as to his conclusion from the facts.

■ While this ruling may make too fine a distinction between the observations of a witness and the conclusions he draws therefrom, this is a matter that we need not here decide.[4] For it is not shown by the record the circumstances under which the evidence was sought to be elicited or its relevance to appellant's guilt or innocence of the crime charged. In the absence of any evidence on the subject, it is impossible to conclude that appellant sustained injury by the court's ruling, particularly in view of the judge's qualifying statement that he

would permit the witness to testify to facts he observed, but not to the conclusion he drew from the facts. This ruling coincides with the provisions of R.S. 15:463. At best, if error was committed, it was of no perceivable consequence.

The conviction and sentence are affirmed.

said that the question of intoxication is a fact and a matter of common knowledge and observation and evidence of it is not opinion evidence.

---

4. This Court has stated to the contrary in a prosecution for driving a motor vehicle while intoxicated. In State v. Blackwood, 162 La. 266, 110 So. 417 (1926), it was