BARHAM, Justice
(dissenting).
I cannot agree with the majority’s disposition of Bill of Exceptions No. 2, reserved to the refusal of the trial court to grant a motion to suppress as evidence a 12-guage shotgun alleged to have been unconstitutionally seized. The seizure was made without a search warrant. At the hearing on the motion to suppress only two witnesses testified, the wife and the brother of the defendant, who were called by the defendant. The State presented no evidence. The wife stated that police officers came to their home, questioned her husband, and took him away with them. The following is all of her testimony about the return of one of the officers and his seizure of the gun: ■
“Q. When did you see this officers again ?
“A. About fifteen or twenty minutes later.
“Q. Who did you see ?
“A. Joe Parker.
“Q. Was he by himself?
“A. Yes.
“Q. What was the nature of his visit?
“A. Well, he came in and sat down and started asking me questions about our personal life and our income and several different things about Robert and me and first one thing and then another.
“Q. Just questioned you, in other words ?
“A. Yes.
“Q. Is that correct?
“A. Yes.
“Q. When did he make mention of a shotgun ?
“A. Well, he had been there about ten minutes and he asked me where the gun was at.
“Q. He said, ‘Where is the gun ?’
“A. Yes.
“Q. What did you tell him ?
“A. I told him it was in the corner over there by the door; He had just come through the door.
"O. When you told him that what did he do ?
“A. He went over there and picked it up and asked me where the shell was at.
“Q. And what did you do?
*779 “A. I took the shell out of my housecoat pocket and handed it to him.
“Q. He just asked you where the gun was and you told him where the gun was and he went and picked it up, is that correct ?
“A. Yes.
“Q. Did he ever present you with a search warrant?
“A. No.
“Q. At the time they came to arrest Robert did they present you with a search warrant ?
“A. No.
“Q. They didn’t seize the gun at the time they arrested Robert, did they?
“A. No.
“Q. After Mr. Parker took the gun did he leave or did he ask you some more questions ?
“A. Well, he told me how sorry he was everything had happened and he says if there was anything he could do to, help to let him know, he would be glad to help in any way he could.
“Q. And then he took the gun and left, is that correct?
“A. Yes.
“Q. Did you actually give him the gun or did he just go take it ?
“A. He asked me where it wás at and he went over there and picked it up and told me how sorry he was and he left. I never told him to take the gun, he never said, ‘I’ve got to take the gun’, or anything, or ‘I’m going to take the gun’, he never said anything like that.
“Q. Once he had the gun in his possession he left, is that right?
“A. He got the gun and told me how sorry he was and left.”
After defendant was taken into custody, the officers stopped at the home of defendant’s brother so he could accompany defendant. The brother testified that at that time the officers did not have the shotgun, and that he overheard the officers saying they had not taken defendant’s gun because the victim had been shot with a rifle. He further testified that later one of the officers came into the sheriff’s office with defendant’s shotgun.
This evidence does not support the holding of the majority that “under the facts presented in this case, the actions of defendant’s wife constituted consent to the seizure by Deputy Parker of the shotgun”. When consent is asserted as the basis for a search and seizure in lieu of a search warrant, the burden of proof rests with the prosecutor to establish by clear and convincing evidence that the consent zvas in fact freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; State v. Andrus, 250 La. 765, 199 So.2d 867; State v. Welch, 256 La. 1, 235 So.2d 72.
*781 When the burden of proof shifted to the prosecutor at the hearing on the motion to suppress after it was acknowledged that there was no search warrant, he was required to present competent evidence to show that the wife had consented to the taking of the shotgun. Yet the State offered no evidence in support of its position.
It is apparent from the testimony offered by the defense that when the officer returned to defendant’s home, he knew of the evidence he wished to seize and knew that it was in defendant’s home, and that he reentered the house for the purpose of seizing that evidence, the shotgun. He had made no attempt to secure a search warrant, nor did he obtain the consent of either the defendant or the defendant’s wife. In fact, not the slightest hint of a request for permission to either search or seize can be gleaned from the previously quoted testimony. See State v. Andrus, supra.
It must be said for the officer that his conduct toward the defendant’s wife was not harsh or abusive, and from her testimony he was sympathetic. This, however, does not make his conduct in effecting the seizure constitutional. Here the wife volunteered no information about the evidence, and did not voluntarily produce and deliver any of the evidence. Her testimony that she had the shotgun shell in her pocket during the conversation of almost 10 minutes and gave it to the officer only upon inquiry is indicative of an intent not to volunteer any evidence. Indeed, it suggests she wished to suppress the evidence.
In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, the court held evidence to be admissible in a criminal prosecution not under a constitutional search and seizure but under a finding of fact that in a spirit of cooperation, in a hope of being helpful to her absent spouse, the wife had given the evidence to the police. The determination of Coolidge v. New Hampshire is inapposite, but the court’s reasoning in reaching that determination differentiates the facts there from those of the present case, and is dispositive of this case. See the court’s discussion in Part III(B). Here we do not have the cooperative wife with the motive of “clearing her husband” and with a belief “that she had nothing to hide”. The conduct in this case is not “a spontaneous, good-faith effort by his wife to clear him of suspicion”.
It was said in Coolidge: “ * * * There is not the slightest implication of an attempt on their part to coerce or dominate her, or, for that matter, to direct her actions by the more subtle techniques of suggestion that are available to officials in circumstances like these.” Under the best appraisal of the officer’s conduct here, his manner was certainly more than merely suggestive in securing the evidence, and certainly, under the circumstances he dominated the sitúa *783 tion. My finding that the evidence suggests that the wife intended to conceal and suppress the evidence and delivered it only when she felt she had no alternative will not permit a conclusion that she consented to the seizure. Under this conclusion the officer’s actions constitute “unconstitutional police conduct”, and the fruits of those actions should have been suppressed.
It is difficult to pen a dissent in a case such as this. In this criminal case where we are seeking truth in -order to mete out justice to one who has violated a basic minimal standard of conduct, certainly truth would be better served if the evidence is considered. But the United States Supreme Court has established now through a long line of cases beginning with Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), that the Fourth Amendment of the United States Constitution[1] embodies not only the right of the people to be secure in their persons, houses, papers, and effects but also embodies the sanction ■of suppressing in criminal proceedings any evidence procured by police violation of this constitutional right.[2] Under this United States Supreme Court construction a double-bladed constitutional mandate forces this dissent.
The only searches and seizures made without search warrant which are considered “reasonable” are those made incident to a lawful arrest, those made under exigent circumstances or in hot pursuit, or those made with voluntary and knowing consent or waiver. No other searches and seizures arc held to be reasonable no matter how practical the result may appear. Unless some other sanction is found to protect this constitutional right, the exclusionary rule must prevail. I therefore respectfully dissent.

. Louisiana Constitution Article 1, Section 7, affords the same protection.

. The late Mr. Justice Black, concurring in Mapp v. Ohio, concluded that “when tiie Fourth Amendment’s ban against unreasonable searches and seizures is considered together with the Fifth Amendment’s ban against compelled self-incrimination”, the exclusionary rule is constitutionally required.