302 So.2d 605 (1974)
STATE of Louisiana
v.
Henry L. FRIERSON and James O. Raphiel.
No. 54825.
Supreme Court of Louisiana.
October 11, 1974.
Rehearing Denied November 6, 1974.
*606 S. Frank Harlow, Jack D. Barnett, Shreveport, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Lawrence M. Johnson, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Defendants, Henry L. Frierson and James O. Raphiel, were charged with the armed robbery of Jerry Fulghum at the Pak-A-Sak Store in Shreveport on November 11, 1971. They were jointly tried and found guilty by a jury. Each defendant was sentenced to serve thirty years at hard *607 labor. On appeal, defendants rely upon six bills of exceptions to obtain a reversal of their conviction and sentence.

BILL OF EXCEPTIONS NO. 1
On the morning of the trial, January 8, 1973, defendants objected to trial on that day, a legal holiday, known as the Battle of New Orleans. When the court overruled their objection, Bill of Exceptions No. 1 was reserved. Article 763 of the Code of Criminal Procedure provides: "Trials and hearings may commence or continue on a holiday or half-holiday in the discretion of the court." It is argued by defendants that the order by the trial court for the commencement of trial on this legal holiday "violates the spirit of its legislative discretion." There is no allegation that the judge abused his discretion or that the defendants were in any way prejudiced by the ruling. State v. Lewis, 255 La. 623, 232 So.2d 294 (1970).[1] Furthermore, the trial date for January 8, 1973 was set on December 6, 1972. Complaint was not made until just before the trial was to begin.
This bill has no merit.

BILL OF EXCEPTIONS NO. 2
Immediately after the jurors were sworn, selected and impaneled, the district attorney filed notice of intent to use statements made by defendants. At this point in time, defense counsel orally sought a severance on the ground that the statement of one of the defendants might incriminate the other, citing Bruton v. United States.[2] No further factual basis for the motion is to be found in the record. The court took a short recess to consider the matter, returned, and then denied the motion. Bill of Exceptions No. 2 was reserved to this ruling.
Severance at trial is provided for in Article 704 C.Cr.P. as follows:
"Jointly indicted defendants shall be tried jointly unless:
"(1) The state elects to try them separately; or
"(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
Severance is not a matter of right. The granting or refusal of a motion for severance is within the sound discretion of the trial judge, whose ruling will be disturbed on appeal only if there is a clear abuse of that discretion. State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971). This Court has repeatedly held that it is not a sufficient showing to merely allege in general terms that the defenses are antagonistic. Rather, the motion for severance must be determined on the stated facts in the motion or as otherwise shown at the time the motion is passed upon to enable the trial judge to ascertain whether the antagonism is such as to necessitate separate trials. State v. Ross, 263 La. 271, 268 So.2d 222 (1972); State v. Bonner, 252 La. 200, 210 So.2d 319 (1968); State v. Progue, 243 La. 337, 144 So.2d 352 (1962); State v. Wittmers, 167 La. 379, 119 So. 263 (1928), and State v. Birbiglia, 149 La. 4, 88 So. 533 (1921).
It is the State's position that no error was committed in this ruling for the reason that the notice of intention to use inculpatory statements was given out of an abundance of caution. The State was of the view that the testimony of Detective *608 Nichols with reference to defendant Frierson's admission that he owned a yellow Mustang (the description of the car used in the robbery) might possibly be considered an inculpatory statement. The only evidence offered at trial was the testimony of this detective that Frierson admitted to him that the yellow 1965 Mustang automobile belonged to Frierson. This is the only statement of an inculpatory nature (if such it was) that was used at trial, and it in no way implicated the co-defendant Raphiel.
In Bruton, the United States Supreme Court held that the admission of a co-defendant's confession implicating defendant at joint trial where said co-defendant did not testify and could not be tested by cross-examination violated the defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. No such situation exists in the present case.
There was no showing at the time this motion was filed in what manner a severance was warranted. The simple assertion that statements would be introduced is not sufficient. Furthermore, no inculpatory statement of either defendant was introduced at trial. This being the case, there is no error in the ruling. State v. Faciane, 233 La. 1028, 99 So.2d 333 (1958).
In brief filed in this Court, defendants state that, as the trial developed, neither defendant dared to take the witness stand because their respective defenses were possibly conflicting, contradictory and/or antagonistic. Again, no factual basis is given for this assertion nor is it indicated how the defenses were antagonistic as developed at trial.
It is significant to note that counsel did not request a hearing on the motion for severance nor did he offer any proof in support thereof.
Under such circumstances, it cannot be said that the refusal of the motion for a severance was an abuse of the discretion vested in the trial court under Article 704 C.Cr.P.
Bill of Exceptions No. 2 lacks merit.

BILL OF EXCEPTIONS NO. 3
This bill was reserved when the trial court ordered a female prospective juror (Mrs. Charley Hicks) excused because she had not met the filing requirements of Article 402 C.Cr.P. The bill is an attack upon the provisions of our law contained in Article VII, Section 41 of the Louisiana Constitution and Article 402 of the Code of Criminal Procedure pertaining to the service of women on juries. Due process and equal protection rights of these defendants are claimed to be violated by these provisions, and it is urged that they are unconstitutional.
This Court has consistently upheld our constitutional and statutory law exempting women from jury service as not violative of the due process and equal protection clauses. State v. Washington, 292 So.2d 234 (La.1974); State v. Brown, 288 So.2d 339 (La.1974); State v. Jack, 285 So.2d 204 (La. 1973). We adhere to this holding. Exemption of women from jury service has been upheld by the United States Supreme Court in Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). We note the recent decision of the United States District Court for the Eastern District of Louisiana in Healy v. Edwards, 363 F.Supp. 1110 (1973) holding the Louisiana provision for women's exemption from jury service unconstitutional. However, this decision is not binding upon this Court. Hence, we will continue to follow the last authoritative expression of the United States Supreme Court in Hoyt v. Florida until that Court has again spoken on the subject.
This bill is without merit.

BILL OF EXCEPTIONS NO. 4
Defendants reserved this bill when the trial court refused their request for a subpoena *609 duces tecum which sought production of a "rap sheet" on Willie Jones. The State had subpoenaed Jones as a possible witness.
It is argued by defendants that the credibility and background of Jones was material to the case and that the "rap sheet" was relevant to that issue. Defendants concede that Jones (who was present at the time the defendants were arrested) was never called to the witness stand during this trial. However, they urge that the subpoena is proper if a witness "may" testify. They thus assert reversible error in the denial of the motion for a subpoena duces tecum in spite of the fact that Jones did not testify.
No error was committed in the denial of this motion. Obviously, no prejudice occurred as a result of the court's denial of the subpoena in view of the fact that the witness was not called to testify. Furthermore, pre-trial discovery of evidence in the hands of the State is not permitted in Louisiana except in certain limited cases. This is not one of those cases. State v. Barnard, 287 So.2d 770 (La. 1973); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967).
Bill of Exceptions No. 4 is without substance.

BILL OF EXCEPTIONS NO. 5
This bill was reserved to the trial court's denial of defendants' motion to suppress.
The articles sought to be suppressed are as follows:
(1) A bag containing clothes and stocking masks removed from a paper sack found in the yellow Mustang;
(2) A .32 caliber gun found at 727 Rainbow Drive;
(3) A bullet removed from the left front shirt pocket of defendant Frierson.
Defendants contend that the above items were seized as a result of an unlawful search in violation of the warrant requirement of the Fourth Amendment.
The pertinent facts in resolution of this issue are generally as follows. The Pak-A-Sak Store in Shreveport was robbed by two black males at approximately 2:00 p.m. on November 11, 1971. The robbed employee gave a general description of the robbers. A customer saw the alleged robbers departing in a 1965 faded yellow Mustang. The description of the vehicle was broadcast over the police radio. At about 2:15 p.m., two police officers separately observed at about the same time a car fitting this description parked at a residence located at 727 Rainbow Drive. As they approached the house, they saw defendant Frierson come to the door and then duck out of sight. One of the officers felt the hood of the car as they passed and found it to be warm. Upon knocking, they were permitted to enter the house. The occupants consisted of defendant Frierson, Myrtis Marie Jones, and the latter's brother, Willie Jones. The officers conversed for a short time with Frierson, discussing old times, as one of the officers had known him for a number of years. One of these officers then told Frierson that he had to check the Mustang outside as it might have been involved in an incident. The license number was radioed in to headquarters and assistance was requested in view of the fact that the officers believed the other suspect might still be in the house. Other police units arrived. Frierson admitted ownership of the car. A brown paper sack from which clothing could be seen was observed on the floor-board of the car. When Frierson was asked to whom the sack belonged, he denied any knowledge of its presence or its ownership. One of the officers then asked Frierson if he could look into the paper sack, and Frierson replied, "Most definitely." After removing the paper sack, its contents consisting of clothes, stocking masks, and a few other items were spread on the trunk of the car. The clothing and masks were identified at trial as that used by the robbers.
Myrtis Jones then told one of the officers that there was another man inside. Two officers then went into the house *610 with her consent and found defendant Raphiel in the bathroom. He was brought out to the front yard where the other parties were located. One of the officers then asked Myrtis Jones for her permission to search the house. She signed a consent waiver. A search of the house revealed a.32 caliber automatic gun hidden in some blankets on the chair in the bedroom. Raphiel and Frierson were then placed under arrest. Frierson was searched, and a .32 caliber bullet was found in his left front shirt pocket.[2]
First, the record shows that defendant Frierson freely and intelligently consented to the search of the contents of the paper sack. The assertion by the police officers in their testimony taken at the motion to suppress is that the reply of Frierson (in response to the inquiry by one of the officers for permission to inspect the contents of the paper sack) was, "Most definitely." Defendants contend that this was contradicted at trial by that officer when he stated:
"A. I asked him if since that wasn't his sack and he had never seen it before would he mind if I took it out of the car andto see what was in it and he said `definitely not.'
"Q. All right, sir. Did you do so?
"A. Yes, sir.
"Q. Now, what did you do with the sack when you took it out?
"A. I took the sack around to the trunk, the rear of the car, and poured the contents out on the trunk."
All of the officers, including this officer, testified both at the motion to suppress and at trial that Frierson freely and voluntarily consented to the removal of the paper sack from the automobile and examination of its contents. This testimony is uncontradicted. Later, the same officer testified several times that Frierson had given him permission to remove the sack from the car and that Frierson's words were "most definitely." On inquiry by defense counsel, he denied that he had previously stated "definitely not." Whereupon, defense counsel remarked:
"Now it really depends on whatwhat the exact language of the question is. Do you mind? Definitely not. Can I search? Most definitely."
Therefore, it is obvious that the one time that Frierson said "definitely not," he was referring to Frierson's response to his inquiry of "would he mind." Thus, there is no merit to this contention.
The Fourth Amendment protects against unreasonable searches and seizures, and when the State relies on consent to establish reasonableness of the search, it carries the burden of showing by clear and convincing evidence that such consent was given freely and voluntarily. State v. Welch, 256 La. 1, 235 So.2d 72 (1970); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Stokes, 250 La. 277, 195 So.2d 267 (1967); State v. Turner, 248 La. 141, 177 So.2d 115 (1965); State v. Pennington, 244 La. 650, 153 So.2d 876 (1963).
The validity of the consent must be determined by the facts and circumstances of each case. After a review of the record, we find the district court properly found that the State had carried the burden of showing that the consent to the search was given freely and voluntarily by defendant Frierson. The contents of the paper sack were therefore admissible at trial.
The gun taken from the house was also admissible in view of the written consent given by Myrtis Marie Jones. No evidence appears in the record showing *611 that this written consent was not freely and voluntarily executed. As a matter of fact, Miss Jones testified at trial that she executed the document after full explanation and knowledge of its content.
After Frierson's arrest based upon probable cause, the police officer searched Frierson and removed the bullet from his person. Under these conditions, the bullet was clearly admissible. As stated in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973):
"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a `reasonable' search under that Amendment."
To the same effect, also see Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).
Thus, the trial court properly permitted in evidence the contents of the paper sack, the gun and the bullet.
Bill of Exceptions No. 5 is without merit.

BILL OF EXCEPTIONS NO. 6
At the close of the State's case, defendants orally moved for a directed verdict of acquittal averring that "the State's evidence presented, all the evidence this far is insufficient to sustain a conviction." The motion was denied and a bill reserved.
Article 778 C.Cr.P. provides that in a jury trial the court may direct a verdict of not guilty on motion of the defendant "after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction." The "insufficiecy" of the evidence, as this term is used in Article 778, has been construed by this Court in State v. Douglas, 278 So.2d 485 (La.1973) as referring "to a situation in which the prosecution has produced no evidence to prove a crime or an essential element" thereof.
Thus, the question of the sufficiency of the evidence is a matter, not for the court, but for the jury, to determine. We must simply find that the prosecution has presented some evidence to prove each and every element of the crime charged.
Bill of Exceptions No. 6, as it appears in the record, relates to the alleged lack of effort on the part of the State to secure fingerprints from the articles seized, as well as at the scene of the crime, and to trace the ownership of the gun. This is the basis for the defendants' assertion that the trial judge erred in not directing a verdict of acquittal. It is further argued that the State's evidence did not prove the material allegations since the testimony was "contradictory, confusing and inconsistent."
These allegations refer to the sufficiency of the evidence, a matter not reviewable on a motion for directed verdict except as stated in the Douglas case.
Nevertheless, we have reviewed the record and find some evidence upon which the jury could reasonably conclude that defendants committed the crime charged.
Bill of Exceptions No. 6 lacks merit.
For the reasons assigned, the convictions and sentences of defendants are affirmed.
BARHAM, J., dissents and assigns reasons.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 2 is valid. This crime was investigated and the arrest of both of these defendants occurred primarily on the basis of the description of the car *612 used in the robbery. The admission by defendant Frierson that he owned a yellow Mustang, the type of car used in the armed robbery, was prejudicial to defendant Raphiel. The arrest of defendant Raphiel, who complains of the denial of the severance under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and the seizure of the physical evidence used at trial came about because the police discovered the yellow Mustang and ascertained its ownership by defendant Frierson through his admission. When this admission was used in this joint trial, it was prejudicial to the defendant Raphiel and he was denied his constitutional right of confrontation of the witnesses against him. I am of the opinion that the conviction of defendant Raphiel should be reversed on this ground.
I also believe that both defendants are entitled to a reversal of their convictions and sentences on the basis of the trial court's action in ordering excused a female prospective juror, a member of the petit jury venire, for the reason that she had not met the filing requirement of Code of Criminal Procedure Article 402.
I respectfully dissent.
NOTES
[1] In the Lewis case, defendants moved for a continuance on the ground that it was a legal holiday. This was not the case in the present instance. No continuance was sought. Defendant excepted to going to trial on that date, January 8, 1973.
[2] 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[2] $151.45 was found on his person. It was established at trial that between $115.00 and $120.00 was taken in the robbery. The mother of Myrtis Jones testified that later that day, after defendants were arrested and taken to the police station, she found money ($124.17) hidden in the potato bin. She called and so informed the police.