340 So.2d 1339 (1976)
STATE of Louisiana
v.
Aaron LEE.
No. 58153.
Supreme Court of Louisiana.
December 13, 1976.
Rehearing Denied January 21, 1977.
*1341 S. Michael Henry, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Aaron Lee and Wilfred Young were jointly charged by bill of information filed on December 6, 1974 with the armed robbery of Delwood Rodi on November 15, 1974. La.Rev.Stat. 14:64. They were jointly tried and found guilty as charged. Lee was sentenced to serve 25 years at hard labor. This appeal by Lee relies on five assignments of error for reversal of his conviction.

Assignment 1
In a motion for bill of particulars defense counsel asked the District Attorney to state the offenses, felonies or misdemeanors, listed on any prior arrest record data of defendants in the possession of the State; also, a) any offense for which defendants Lee or Young were arrested or convicted before November 15, 1974, b) the date of the arrest or conviction, and c) the parish (or county) and state where the offense occurred.
The District Attorney answered that "the defense is not entitled to this information." The trial judge agreed.
It is the defense contention that this ruling violated Lee's right to due process guaranteed by the Fourteenth Amendment to the United States Constitution. Knowledge of defendant's prior criminal record, the defense argues, is indispensable to proper preparation for trial, and defendant has the right to examine and correct entries in his criminal record.
Arrest and conviction records are public records and are available to the defense. La.Rev.Stat. 44:1 and 3 (1973).
In brief, the defense seeks an expansion of the rule of pretrial discovery in criminal cases to include defendant's criminal record in the State's possession. No authority or argument has been advanced to warrant such an extension. State v. Baker, 288 So.2d 52 (La.1975).

Assignment 2
On January 6, 1975 defense counsel filed a motion to sever on behalf of appellant Lee. The motion alleged that Lee was innocent of the charge against him and had never been imprisoned for any offense, while Young, his codefendant, did have an extensive record of convictions. Lee intended to call Young as a witness to exculpate and clear Lee of wrongdoing, which he could not do without Young's consent, for Young's prior record of convictions would not permit him to consent to testify and subject himself to cross-examination. The result would be that Lee would lose the benefit of Young's exculpating testimony. Under these circumstances, according to the motion, it would be prejudicial to Lee to be tried with Young.
The motion to sever was denied.
Article 704 of the Code of Criminal Procedure sets forth that "Jointly indicted defendants shall be tried jointly unless: (1) The state elects to try them separately; or (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
Since the State has not elected to try the defendants separately, it is only necessary to consider whether the trial judge abused his discretion in deciding that justice did not require a severance. State v. Frierson, 302 So.2d 605 (La.1974).
Lee argues that Young had a record of prior convictions, which would prevent *1342 Young from taking the witness stand to testify and exculpate Lee, but it is not shown that the jury was aware of Young's record. Young's failure to take the stand does not, therefore, lead to the conclusion that the jury would infer that the reason for his failure to testify was his record of prior convictions. State v. Medlock, 297 So.2d 190 (La.1974); State v. Smith, 283 So.2d 470 (La.1973).
Lee's contention that severance should have been granted because he could not compel Young to take the stand is answered by the decision in State v. Baker, 288 So.2d 52 (La.1973):
". . . [T]his court has squarely held that an accused is not entitled to severance simply because he alleges that he wishes to call his codefendant as a witness, which he cannot do when the codefendant is on trial with him for it was contrary to a defendant's constitutional right against self-incrimination to compel him to take the stand. In holding this contention to be without merit, we have observed that separate trials would not assure this right. Both defendants were involved in this crime which involved only one transaction. Therefore, even if severance were granted, the codefendant not being tried could not be compelled to testify. He could claim his Fifth Amendment rights. . . ." at page 57.
Defense counsel asserts that, because Lee took the stand in his own behalf, the jury's attention was called to the fact that Young's failure to take the stand was because of his guilt. Thus, it is argued, the jury would infer that because Lee was being tried with Young he too was guilty. The argument seems repetitive but because it is based upon the decision in DeLuna v. United States, 308 F.2d 140 (5th Cir. 1962) it will be considered in that light.
The DeLuna rule applies only when counsel's duty to his client requires him to draw the jury's attention to a possible inference of guilt from his codefendant's silence. A duty to do so arises only when the defenses of the codefendants are antagonistic. No antagonistic defenses have been shown or argued here; whereas, in DeLuna true antagonistic defenses were involved. Gurleski v. United States, 405 F.2d 253 (5th Cir. 1969).
Lee's defense at the trial was alibi. He claimed that he had been in a bar about the time of the robbery and had only met with Young after the offense occurred. A few minutes later they were arrested. According to his defense, Lee was unable to state that Young was the robber or to testify to the facts surrounding the offense. His defense was not antagonistic to Young's.

Assignment 3
A motion to suppress the identification of Lee by the victim Delwood Rodi was denied.
Rodi was robbed by two black males at approximately 9:30 on the night of November 15, 1974 in the 2100 block of Burgundy Street. During the encounter he was cut and stabbed by one of the robbers. When the robbers fled on foot he returned home and his mother called the police. They obtained a description of the assailants and departed. Lee and Young were arrested shortly thereafter, at approximately 9:45, at St. Bernard Avenue and Marais Street. After the arrest, Officers Reed and Gavin handcuffed Lee and Young and transported them to the 2100 block of Burgundy Street, arriving in 2 or 3 minutes. On arrival, the police told Rodi, "We think we caught them." Although he was distraught from his experience and on the way to the hospital, Rodi positively identified Lee and Young as the robbers.
Considering the time and place and the absence of intentionally suggestive conduct by the police the trial judge was convinced that the motion to suppress should be denied. There is no error in the ruling.
In-field identifications are permissible when they are "closely associated in time with the criminal transaction." State v. Maduell, 326 So.2d 820 (La.1976). Prompt confrontation promotes fairness by supporting reliability of identification or *1343 the expeditious release of innocent suspects. The totality of circumstances must be considered in determining whether the in-field identification is fairly conducted or unduly suggestive. State v. Bland, 310 So.2d 622 (La.1975).
Insofar as the in-court identification is concerned, the trial judge correctly points out in his per curiam that Rodi's in-court identification had a source independent of the in-field identification. Although Rodi had no prior acquaintance with Lee and Young, the robbery lasted from 5 to 10 minutes, during which time both assailants stood in full view of Rodi, giving him the opportunity to observe their faces in close proximity for 3 to 5 minutes. The lighting was adequate, coming from a street light directly across the street. Rodi was 22 years old at the time and in the National Guard. And, while he was not questioned about physical infirmities which might impair his observation or recall, the logical inference is that he had no impairment. The trial judge who saw and heard Rodi on the witness stand found him to be entirely capable of making the positive identification he did make.
Except for an absence of Rodi's prior acquaintance with the accused, all factors designed to establish the reliability of the independent source of the in-court identification were satisfactorily fulfilled. State v. Peevy, 321 So.2d 324 (La.1975). No one of these factors is sacramental. They are merely standards designed to assist the Court in arriving at a proper result.

Assignment 4
Lee contends the trial judge erred in allowing state evidence of another armed robbery to prove system, knowledge and intent. The extraneous offense objected to occurred approximately an hour and fifteen minutes before Rodi's robbery. David J. Peltier was alone and walking near his house on Dauphine Street about 8:30 when he was accosted by two black men. One of them pulled a knife covered by a handkerchief and demanded Peltier's wallet. Peltier surrendered his money clip. When he reached for money in another pocket the assailant tried to stab him in the stomach and in warding off the thrust, Peltier's hand was cut. They also took his coat and a class ring. The incident lasted about ten minutes, after which the assailants fled on foot.
It has been consistently held that Sections 445 and 446 of Title 15 of the Revised Statutes permit the introduction of evidence of other offenses, where almost identical tactics are employed, to prove knowledge, system and intent. The test of admissibility is whether the evidence is relevant and whether its probative value out-weighs its prejudicial effect. Here the relevancy of the extraneous evidence is to show system or modus operandi and to corroborate evidence of the offense charged.
In the instant case each victimin the extraneous offense and in the case at barwas approached on the street while in front of or near his house. Both victims were cut with a large knife; each victim was on foot and alone; the two offenses were committed within a one-hour and fifteen-minute time span and within a mile of each other. Each victim was attacked by more than one black male. On both occasions the assailants left the scene in the same fashionrunning on foot.
The trial judge found the factual situation here to be strikingly similar to the facts in State v. Grant, 295 So.2d 168 (La. 1973). He was governed by that authority in his ruling. Here, as in State v. Grant, the methods used in both robberies were similar and a close connexity in both time and distance existed. Under the defense contention, it was unnecessary to prove knowledge and intent in this offense, and, therefore, evidence of the extraneous offense should not have been allowed. However, similarity by clear and convincing evidence did establish the relevancy of the extraneous offense to the method or system the robbers employed.
Even though Peltier was unable to positively identify his assailants because of darkness at the scene, the fact that Lee and *1344 Young were his assailants was presented by clear and convincing evidence when it was shown that the coat and class ring belonging to Peltier were found in their possession.
There is no merit in this assignment.

Assignment 5
Defense counsel objected to the testimony of various witnesses that stains on clothing, money and other objects were bloodstains. It is the defense contention that these lay witnesses were not competent to testify that the stains were bloodstains, because the stains were small and no chemical analysis had been made to prove that they were bloodstains. The effect of the argument is that only experts could give such opinion testimony.
The contention is answered in State v. Skipper, 284 So.2d 590 (La.1973) and State v. Garner, 255 La. 115, 229 So.2d 719 (1969). The teaching of these cases is that blood is a common thing a lay witness may recognize, and testimony that an object is stained with blood is not opinion testimony. If the recital of the fact is within the knowledge of the witness, a mistake affects the weight of his testimony and not its admissibility.
This assignment is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs with reasons.
DIXON, J., dissents with reasons.
TATE and CALOGERO, JJ., dissent for the reasons assigned by DIXON, J.
DIXON, Justice (dissenting).
I respectfully dissent.
As the majority seems to admit, the evidence of the other offense (the robbery of Mr. Peltier) could not be used in this prosecution to show guilty knowledge or intent because guilty knowledge and intent were not in issue in this case. State v. Harrison, 291 So.2d 782 (La.1974); State v. Moore, 278 So.2d 781 (La.1973). In addition, evidence of the other offense is not admissible to show "system" as contemplated by the drafters of R.S. 15:446. That article provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." (Emphasis added).
System in the above statute refers to the continuity of two or more activities for the completion of an offense. State v. Gaines, 340 So.2d 1294 (La.1976); State v. Hicks, 301 So.2d 357 (La.1974).
However, the jurisprudence of this State has permitted the introduction of evidence of other offenses for the purposes of showing the identity of the perpetrators under a "modus operandi" or "similar method" exception to the prohibition of introduction of evidence of other crimes. However, that "modus operandi" or method must be so similar in the two crimes that proof of one leads logically to the conclusion that the perpetrator of one offense is the perpetrator of the other. Stated otherwise, both crimes must exhibit such peculiar modes of operation to distinguish them as the work of the same person(s). State v. Gaines, supra. An example of such a striking similarity in method would be the recently reported incident of the alleged rapist who sucks the toes of his rape victims. Another example would be the case in which the defendant staged a series of armed robberies, in broad daylight, of Zetz 7-Up beverage trucks. All of the robberies were during the day, a sawed-off shotgun was used in each case, only Zetz 7-Up trucks were robbed, and all were robbed while en route making deliveries. State v. Price, 325 So.2d 780 (La.1975).
Although the two armed robberies in the case before us do exhibit similar characteristics (as do many armed robberies), the *1345 method employed, or "modus operandi", is not so peculiarly distinctive such that one must logically say that they are the work of the same person(s). (For example, although a knife was used in both crimes, in the Peltier robbery, the perpetrators had the knife wrapped in a Western style handkerchief, which was not present in the Rodi robbery. Peltier was robbed at his front door while Rodi was robbed in the street. In the Peltier robbery the perpetrators attempted to force Mr. Peltier into his house and no such attempt was made in the Rodi robbery). The methods employed in these two crimes are not so similar and distinctive to fit within the "method" or "modus operandi" exception. State v. Gaines, supra; State v. Hicks, supra; State v. Harrison, supra.[1]
DENNIS, Justice, concurring.
I agree with the statement of law set forth by Justice Dixon in his dissenting opinion. However, in my view the modus operandi employed by the defendant in both the charged and the uncharged offenses, considering the context within which they occurred, are so peculiarly distinctive that one must logically say they are the work of the same person. I do not reach this conclusion merely because the two offenses occurred within one and one-half hours and within six or seven city blocks of one another, were committed by two perpetrators of the same race and sex, and involved the stabbing of each victim. These common features alone are not sufficiently distinctive to raise a logical inference that the perpetrators of the prior offense bearing such marks were the perpetrators of the charged offense. However, there is an additional similarity or common mark present in this case which renders evidence of the other crime admissible. That mark is the very presence of Wilfred Young with the defendant as one of the perpetrators of both the charged and the uncharged offenses.
In People v. Haston, 69 Cal.App.2d 233, 70 Cal.Rptr. 419, 444 P.2d 91 (1968), a case involving somewhat similar facts, the Supreme Court of California stated:
"* * * There is only one Donald McDowell, and his conjunction with defendant in earlier robberies, together with his admitted participation in the robberies charged, supports the inference that defendant and not some other person was his accomplice in those charged offenses. It thus appears that evidence of the uncharged offenses has some probative value on the issue of identity.
"It remains to be determined, however, whether the common mark of McDowell's presence, considered in combination with the other common marks to which we have adverted, invests the evidence of other crimes with probative value sufficient to outweigh its clear prejudicial effect. We think that it does. Although, as we have stated, the other common marks are so lacking in distinctiveness that even considered in combination they would be insufficient to warrant admission, the addition of McDowell's presencea significantly distinctive mark into the combination yields a different result.
"The issue in this case is the identity of McDowell's crime partner in the three charged robberies. The prosecution's identification evidence says that that crime partner was defendant. On the other hand, defendant and his alibi witnesses and McDowell himself say that that crime partner was not defendant. It is in this context that we assess the probative value of the other-crime evidence.

*1346 That evidence tends to show that on at least two other occasions defendant had been McDowell's crime partner in robberies bearing other marks of similarity to the charged offenses. It is clear that in this context the other-crimes evidence has great probative value on the issue of identity. (See People v. Roach, supra, 148 Cal.App.2d 364, 367-368, 306 P.2d 523.) We hold that that probative value was sufficient to outweigh the prejudicial effect of the evidence, and that therefore the admission of such evidence was proper * * *." 70 Cal.Rptr. at 430, 444 P.2d at 102.
I reach the same conclusion as that of the California supreme court in Haston. The clear and convincing evidence that defendant accompanied by the identical crime partner, Wilfred Young, committed two armed robberies in the same vicinity, separated only briefly in time, upon victims who were cut with a knife during the offenses, renders the defendant's modus operandi particularly distinctive. Because of Lee's alibi defense the probative value of the other-crime evidence on the issue of Lee's identity was sufficient to outweigh its prejudicial effect so as to prevent it from being inadmissible. See also, 2 Wigmore on Evidence, § 411 (3d ed. 1940); McCormick on Evidence, § 190, p. 449 (1972).
I respectfully concur.
NOTES
[1] It is also my belief that the introduction of the evidence of the Peltier robbery was error because the test stated in State v. Moore, supra, has not been complied with. In Moore this court held that even if evidence of other offenses is otherwise admissible under one of the exceptions provided in R.S. 15:445-46, its introduction is error if the probative value of that evidence is outweighed by its prejudicial effect. 278 So.2d 781, 786. An examination of the record in this case reveals that over 40% of the State's case-in-chief (direct examination, redirect and the introduction of physical evidence) involved reference to or evidence of the "other offense." Under these circumstances, the probability that the prejudicial effect of the evidence of the "other offense" outweighed its probative value is evident.