344 So.2d 1039 (1977)
STATE of Louisiana
v.
Jimmy FRANK.
No. 58872.
Supreme Court of Louisiana.
April 11, 1977.
*1040 Alex L. Andrus, III, Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, First Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged the defendant, Jimmy Frank, with the armed robbery of Linda Gail Young, a violation of LSA-R.S. 14:64. A jury found him guilty as charged. He received thirty-three years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.
The defendant appeals. He relies on four assignments of error for reversal of his conviction and sentence. Assignment of Error No. 4 is considered abandoned as it was neither briefed nor argued. State v. Phillips, La., 337 So.2d 1157 (1976); State v. Blanton, La., 325 So.2d 586 (1976); State v. Carlisle, La., 315 So.2d 675 (1975).
The following are the facts leading to the defendant's arrest:
One Sunday night at 8:50 p.m., Linda Gail Young and Lois Smith, employees of Kajun Kitchen, an Opelousas restaurant, observed a black male enter the establishment. He had a moustache and goatee. The man wore a dark knit cap, large sunglasses, *1041 and an oversized dark striped sportcoat. He walked to the cigarette machine, into the dining room, back to the cigarette machine, and then to the telephone. Young inquired if she could help him, but he shook his head. Then he approached the counter, pulled a gun on Young, and demanded money. She gave him one twenty dollar bill, three fives, and some ones. After taking the money, he left.
The police saw the defendant six or seven blocks from the Kajun Kitchen at 9:02 p.m. They recognized him by the description given over the police radio. He was running and at the same time changing clothes. When they stopped the defendant, he wore a shirt and carried another shirt and a black and green striped sportcoat in his hand. A search of the defendant produced a blue knit cap, sunglasses, one twenty dollar bill, three fives, and nine ones. He did not have a gun. The police immediately arrested him.

ASSIGNMENT OF ERROR NO. 1
The defendant timely filed the following motion to suppress:
"The testimony of Linda Young, a state witness, be suppressed at the trial of this matter, on the grounds that her identification of the defendant at a preindictment show-up was the subject of constitutionally impermissible suggestion and abusive procedures, and that all of her future recollections relating to the identification were tainted and accordingly, inadmissible."
Minutes after the officers arrested the defendant, they brought him to the Kajun Kitchen. Young, the victim, was unable to initially identify him. The officers then requested that she leave the room. They dressed the defendant with the knit cap, striped coat, and sunglasses found on him. When she next viewed the defendant so attired, Young hesitantly identified him as the robber.
The defendant objects to the single suspect identification and the police's dressing him in the clothes found in his possession at arrest. His counsel contends "that this confrontation, while in police custody, was so suggestive that it effectively denied the defendant due process of law."
During the hearing on the motion to suppress, Young picked out the clean shaven defendant as the robber while he sat among a group of black males. (The robber wore a moustache and a goatee.) At trial, she identified the defendant as the man she chose as the robber at the previous hearing. Each time Young identified the defendant, she expressed some doubt.
To determine whether this identification procedure is impermissibly suggestive and, therefore, violative of due process, we must look to the totality of circumstances. State v. Rhodes, La., 308 So.2d 770 (1975); State v. Melton, La., 296 So.2d 280 (1974) and the cases cited therein.
The law does not favor one-on-one confrontations between the victim and a suspect. However, they are permissible when the police apprehend a suspect within a relatively short time after the crime and bring him to the scene for an on-the-spot identification. This immediate confrontation assures the reliability of the identification as the perpetrator's appearance is fresh in the witness's mind, lessens the possibility that the perpetrator will change his clothes or appearance, and insures the early release of innocent subjects. State v. Lee, La., 340 So.2d 1339 (1976); State v. Maduell, La., 326 So.2d 820 (1976); State v. Newman, La., 283 So.2d 756 (1973), cert. denied, 415 U.S. 930, 94 S.Ct. 1442, 39 L.Ed.2d 489 (1974); State v. Bland, 260 La. 153, 255 So.2d 723 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
The defendant does not point to, nor do we find, any specific instance of impermissible police suggestion.
In State v. Jackson, La., 337 So.2d 508 (1976), we affirmed an armed robbery conviction in which an on-the-scene confrontation was similar to the one at bar. Although the robber wore a scarf to hide his face, the victim caught a glimpse of his face at close range. Less than fifteen minutes *1042 after the robbery the police apprehended the defendant and immediately brought him to the scene. Both the victim and a witness identified the defendant as the robber. We stated that when a witness makes an identification voluntarily and without any impermissible police suggestion, the fact that the police holds a mask to the defendant's face after the identification is made does not ex post facto taint the identification. Similarly, we conclude that the police's dressing the defendant prior to submitting him for identification does not invalidate the identification made in this instance. The totality of the circumstances dictates this result. Moreover, police act within constitutional bounds when they attire a suspect in clothes similar to those worn by the perpetrator for the purpose of identification. See Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); U.S. v. Wilcox, 507 F.2d 364 (4th Cir. 1974), cert. denied, 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975).
Thus, we find the motion to suppress properly denied.
However, assuming that the one-on-one confrontation was tainted, the in-court identification was properly admitted if it has a source independent of the out-of-court identification. In this determination, three factors are relevant: (1) the prior acquaintance of the witness with the accused; (2) the length of time the witness observed the perpetrator before, during, and after the commission of the offense; (3) the circumstances under which the observation was made, i.e., the illumination at the scene, the witness's physical capacities, and the witness's emotional state at the time of the observation. State v. Fortenberry, La., 307 So.2d 296 (1975); State v. Moseley, La., 284 So.2d 749 (1973); State v. Newman, supra.
The victim did not know the defendant prior to the robbery. She observed the robber enter Kajun Kitchen and walk around for several minutes before he approached her. She spoke to him, his response was a nod of the head. She had an unobstructed view of the robber at all times. When he stood at the counter, he was only 1½ feet from her. She testified that although she was afraid when he pointed the gun at her, she did get a good look at him. The entire room was well lit. There is no evidence that Young suffered from impaired vision.
We are convinced that the in-court identification had a source independent of the out-of-court confrontation.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
The defendant alleges that the Assistant District Attorney commented on his failure to testify. Based on this contention, the defendant moved for a mistrial and a new trial. The trial court denied both. He assigns these rulings as error.
In his closing argument the prosecutor stated:
". . . The next aspect of this case I think that we have to consider very seriously, is that the defendant's defense in this case is an alibi, and the judge is going to explain to you that an alibi, just like any other specie of evidence, must be proven and must be believable. Can we believe the defendant's alibi that he was at the Airline Bar at the time this allegedly took place, and that the money he had on him was to pay a bill to Audrey Williams for car repairs. Audrey Williams told you that the defendant owed him $42.90 for repairs that he had done on the defendant's car one week before. Of course, now, the defendant, as I appreciate it, has been trying to convey to you that the automobile stopped because it was popping. It wasn't running well. But Audrey Williams told you that he completely timed this car, timing gear, points and plugs, the whole thing, and that the car was running well, and that when the defendant called him on a Saturdaythe robbery takes place on a Sundayhe made no complaints about his car running bad. Contrary, the car was *1043 running good. The officers proved that when they cranked the car over at the station. What does the defendant tell Audrey Williams on Saturday? `I don't have the money to pay you now, but I'll have it Monday.' I don't have it now, but I'll have it Monday. Up until that point in the case, there was no real motive for this robbery, but now the defendant, with one of his witnesses, injects a motive. He has got to have $42.90 by Monday. I don't have it on Saturday, but I'll have it by Monday. When he's caught, he's got it. We know he doesn't have it Saturday, but when he's caught on Sunday night, he had it. Well, now what explanation does he have for that? He doesn't tell us where he gets the money with Willie Aaron" [Emphasis supplied.] (Tr. pp. 185-6)
The defendant moved for a mistrial pursuant to Louisiana Code of Criminal Procedure Article 770(3), which provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense;"
We have consistently held that, to constitute reversible error under this provision, the inference must be plain that the remark was intended to bring to the jury's attention the failure of the defendant to testify. State v. Reed, La., 284 So.2d 574 (1973); State v. Howard, 262 La. 270, 263 So.2d 32 (1972); State v. Bentley, 219 La. 893, 54 So.2d 137 (1951).
Willie Aaron saw the defendant on the morning of the robbery. He testified that the defendant showed him several bills (some fives and some ones) with which he was to pay his auto mechanic, Williams. At trial, defense counsel attempted to negate any motive for the robbery by showing that the defendant had money to pay Williams.
As is evident from the language used, the Assistant District Attorney referred to Aaron's failure to explain the source of the defendant's money. The argument made no reference to the defendant. Thus, the trial judge properly denied the defense's motion for a mistrial.
Likewise, we hold that the denial of the motion for a new trial was correct.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 5
A joint stipulation made by counsel and accepted by the trial judge describes the facts of this assignment of error. It reads in pertinent part:
"1. Before the trial, at a pre-trial conference, attended by the presiding Judge, Assistant District Attorney ........, and defense attorney ........ held in chambers, the prosecution systematically presented the factual merits of this case against the defendant to the Judge, together with the pertinent criminal history of the defendant (rap sheet), and, after due consideration, the presiding Judge proposed to the defense attorney that a sentence of twenty years would be imposed in exchange for a plea of guilty. The defendant elected to pretermit a guilty plea and exercised his right to the trial.
"2. A trial by Jury was conducted on April 24, 1975, and April 25, 1975. During the course of the trial, at a recess, the defense attorney, in the presence of the Assistant District Attorney, in Chambers, requested the presiding Judge to propose a prospective sentence in exchange for a guilty plea at that time. The presiding Judge again proposed a sentence of twenty years, and the defendant elected to continue his right to a trial.
"3. On May 2, 1975, the defendant was sentenced in open Court by the presiding Judge to thirty-three years at hard labor without benefit of parole, probation, or suspension of sentence, whereupon the defense attorney objected to the imposition of sentence in excess of twenty years in that it was a denial of the right to due process under the Fourteenth *1044 Amendment to the United States Constitution. The defense attorney at that time requested an evidentiary hearing to perpetuate the facts above recited. However, the Court then took judicial notice of the facts, after consultation with counsel, and the motion for an evidentiary hearing was withdrawn."
The defendant contends that the judge's imposition of a greater sentence after trial than that which he proposed at the plea bargaining discussions violates due process, as the greater sentence penalized him for exercising his constitutional right to trial by jury.
Our jurisprudence consistently holds that a sentence within the statutory limits is generally not subject to judicial review. State v. Butler, La., 302 So.2d 585 (1974); State v. Pierson, La., 296 So.2d 324 (1974); State v. Polk, 258 La. 738, 247 So.2d 853 (1971). Armed robbery has a maximum sentence of ninety-nine years imprisonment. LSA-R.S. 14:64(B). Hence, the sentence imposed is well within the statutory limits.
Assuming arguendo, however, that the due process complaint is reviewable, we find no merit in it.
A sentence has three general objectives: deterrence, rehabilitation, and public protection. Council of Judges of the National Council on Crime & Delinquency, Guides for Sentencing, p. 6 (2d ed. 1974). In determining the sentence, the judge must consider numerous factors. That the defendant has pleaded guilty is one of them. It is constitutionally permissible for the court to grant sentence concessions to a defendant who pleads guilty. The trial judge, of course, must determine when such a concession is in the public interest.
The American Bar Association Standards, Pleas of Guilty, § 1.8, sets forth the appropriate considerations as follows:
"(a) It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when the interest of the public in the effective administration of criminal justice would thereby be served. Among the considerations which are appropriate in determining this question are:
(i) that the defendant by his plea has aided in ensuring the prompt and certain application of correctional measures to him;
(ii) that the defendant has acknowledged his guilt and shown a willingness to assume responsibility for his conduct;
(iii) that the concessions will make possible alternative correctional measures which are better adapted to achieving rehabilitative, protective, deterrent or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;
(iv) that the defendant has made public trial unnecessary when there are good reasons for not having the case dealt with in a public trial;
(v) that the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct;
(vi) that the defendant by his plea has aided in avoiding delay (including delay due to crowded dockets) in the disposition of other cases and thereby has increased the probability of prompt and certain application of correctional measures to other offenders.
"(b) The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the rehabilitative, protective, deterrent or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove his guilt at trial rather than to enter a plea of guilty or nolo contendere."
Although the trial judge in the present case is opposed to plea bargaining in principle, his sentence Per Curiam demonstrates that he is familiar with the appropriate *1045 considerations and took them into account when consulted concerning the guilty plea.[1]
As paragraph (b) makes clear, if the defendant elects to go to trial, no sentence should be imposed that exceeds that justified by the rehabilitative, protective, deterrent and other purposes of the criminal law. Stated differently, the justified sentence should not be increased because of vindictiveness arising from the exercise of defendant's right to stand trial. See United States v. Cunningham, 529 F.2d 884 (6th Cir. 1976).
In his Per Curiam the trial judge noted the following factors which influenced his determination of the sentence: the defendant's courtroom attitude, the seriousness of the crime of armed robbery, the risk of repetition, the threat to human life, and the legislative classification of armed robbery as a most heinous offense with a maximum sentence of ninety-nine years imprisonment, without the benefit of probation, parole, or suspension of sentence. See LSA-R.S. 14:64(B). We find nothing in the record to support a conclusion that any part of the sentence was imposed vindictively as a punishment for defendant's exercising his right to trial.
The defendant apparently contends that the mere fact that he received a longer sentence after trial establishes that the longer sentence was unjustified and deprived him of due process. We reject this argument. A judge's disposition to impose a lenient sentence during plea discussions should not be understood as setting a limit for the justifiable sentence under accepted principles of criminal justice. The better view, we think, is that the plea proposal is a concession from the greatest justifiable sentence, the concession being made because of circumstances surrounding the plea.
We conclude that the sentence contains no constitutional infirmity. Specifically, we hold that the defendant's right to due process of law has not been abridged.
This assignment of error is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
TATE and CALOGERO, JJ., concur in part and dissent in part.
TATE, J., assigns reasons.
CALOGERO, J., joins in TATE, J.'s reasons.
DENNIS, J., concurs in the decree only.
TATE, Justice (concurring in part, dissenting in part).
The writer concurs in the affirmance of the conviction, but he feels that the sentence should be set aside and the case remanded for a sentence-hearing and for resentencing.
La.C.Cr.P. art. 843 (1974) mandatorily requires that the original sentence hearing be recorded. Inadvertently, such recording was not made. Consequently, the accused was deprived of his right to have the colloquy and showing at time of sentencing transcribed. Due to this inadvertent failure on the part of the court, the accused has been deprived of an opportunity for appellate review of his contentions of excessiveness of the sentence.
The trial court imposed an additional thirteen years imprisonment upon the accused, beyond the twenty previously determined by the judge to be appropriate, for no other reason than that the accused exercised his constitutional right to stand trial for the crime charged rather than plead guilty to it.
*1046 Thus, it is argued, the sentence imposed violates due process or is constitutionally excessive, see, La.Const. of 1974, Article 1, Section 20, State v. Williams, 340 So.2d 1382, 1984 (La.1977). These contentions can best be evaluated on appeal by review of the transcribed showing of the sentencing hearing and the contemporaneous (rather than merely recollected) reasons for the sentence of the trial judge.
NOTES
[1] . . . [T]he Court has always hoped that guilty pleas manifest a feeling of repentance, which the Court hopes would be a deterrent to the individual committing this crime again, and has taken that into sentencing consideration.

"The Court further recognized (without agreeing to the basic idea) that the District Attorney feels that plea bargaining is an expeditious method of disposing of cases and unblocking the log-jam of criminal cases in this jurisdiction, actually aiding in keeping the docket current as the Criminal Docket is up to date."