349 So.2d 286 (1977)
STATE of Louisiana
v.
Willie WILLIAMS.
No. 59142.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*288 Irwin R. Sanders, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Willie Williams was charged by bill of information with armed robbery in violation of La.R.S. 14:64.[1] After trial by jury, defendant was found guilty as charged and sentenced to serve ninety-nine years at hard labor with credit given toward service of sentence for time spent in actual custody prior to imposition of sentence. The trial judge granted defendant an out-of-time appeal. On appeal, defendant relies on four assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to suppress certain physical evidence seized in an allegedly unconstitutional search and in failing to suppress in-field identifications of defendant by Jerome Squatrito and Doris Robinson.
The record of the suppression hearing reflects that at approximately 11:30 p.m. on April 1, 1973, defendant and two companions, Earnest Durand, Jr. and Joseph Smith, Jr., were present at Jerome's Bar in New Orleans. The barmaid, Doris Robinson, testified that one of the three men remained seated while the other two asked her to change pennies for a nickel and dime. Shortly thereafter, Joseph Smith exited the establishment and asked the proprietor of the bar, Jerome Squatrito, who was standing outside on the sidewalk whether he was *289 the owner of the business and where he could catch a local bus. A few minutes later, Earnest Durand also exited the bar and told Squatrito that he was waiting for a friend. After another few moments had elapsed, defendant joined the others outside and whispered something to Durand. The three subjects then drew pistols and marched Squatrito back into his establishment at gunpoint. The bar owner testified that they rifled his pockets as they went inside and that defendant forced him up against a wall and held a gun to his stomach while the other men robbed the cash register and dealt with customers present in the barroom. As soon as the perpetrators fled, Squatrito instructed his employee, Doris Robinson, to call the police, tell them that he was following the robbers and that they should wait for him to return to the barroom. He followed the robbers' green Chevrolet in his car as they made their getaway. At a red light, Squatrito pulled alongside the subjects' car and verified that besides the driver, there were two other occupants crouched down in the automobile. Squatrito then dropped back behind the vehicle, took down its license number and continued to follow until the subjects turned into a housing project. When the robbery victim got back to his place of business about ten minutes later, Officers Saacks and Lombos were waiting for him, having already obtained a physical description of the suspects from Doris Robinson. Squatrito gave the officers a description of the getaway car and its license number and then accompanied them as they backtracked over the escape route and began combing the project area for the suspects' car. In the meantime, Officers Kinler and Cutrer, manning a marked police unit in the area, spotted an automobile matching the description and bearing the license number dispatched moments earlier over the police radio. They communicated this information via radio to other units in the area and, after following for a few blocks, stopped the suspects' vehicle. The officers ordered the three occupants to get out of the car and "hit the ground." They informed them that they were under arrest for armed robbery and advised them of their Miranda rights. Responding to the broadcast that the car had been located and stopped, the police unit carrying Officers Saaks and Lombos, as well as Squatrito, and another unit manned by Officers Mendoza and Delsa converged on the scene of the arrest.
After the suspects were handcuffed and moved in front of the automobile headlights, Squatrito, who had been told to wait in the car till the area was secured, was asked to get out and see if the subjects apprehended were the ones who had robbed him. The victim testified that he immediately recognized the three and positively identified them as the perpetrators of the armed robbery.
As the suspects were being placed in the police vehicles, Officer Saaks walked closer to the getaway car. Both doors had been left open when the suspects exited the automobile. On the floor of the vehicle partially pushed under the driver's seat, Officer Saaks observed a cash register drawer sticking out of a brown paper bag. He removed the bag from the car and on closer inspection found that, besides the register drawer, the bag additionally contained Squatrito's wallet and keys which had been removed from his pockets during the robbery. Also plainly visible on top of the car's front seat was a paper bag which contained a black hood and either in the bag or alongside of it was a nickelplated .22 revolver.
At this point, only one hour after the offense, the suspects were transported back to the scene of the robbery where they were positioned under bright lights outside a screen door of the establishment. The officers asked the barmaid, Doris Robinson, if she knew the three men. The witness maintained that the suspects were presented to her without any explanation by the police. The officers did not indicate that they had arrested the culprits or ask her to identify them as such. Both she and Squatrito identified the subjects in custody as the individuals who had earlier robbed the barroom. While Doris Robinson recalled that she had recognized one of the subjects *290 by his distinctive plaited hairstyle, she was unable to identify defendant either at the suppression hearing or at trial, claiming that she had forgotten what the perpetrators of the offense looked like.
Defendant first contends that the evidence removed from the green Chevrolet was the product of an improper search and should have been suppressed by the trial judge.
La.Code Crim.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
. . . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer;

. . . . .
Recently in State v. Marks, 337 So.2d 1177 (La.1976), this court stated:
. . . Reasonable cause, which we have treated as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). Reasonable or probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Sarrazin, 291 So.2d 393 (La.1974). Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Warren, 283 So.2d 740 (La.1973).
In the instant case, defendant and his companions were stopped and apprehended shortly after the offense while still traveling in the getaway car bearing the license number and matching the description given by the victim and broadcast over the police radio. Moreover, the suspects were in the same area where they had been last seen by the pursuing victim before he returned to his business to report the information he had gained to the police. Under these circumstances, we are satisfied that the officers had ample probable cause to stop the getaway car and to arrest the suspects. When they exited their car, leaving the doors open, the suspects thereby exposed to the view of the arresting officers evidence of the armed robbery.
It is well settled that objects falling within the plain view of an officer who had a right to be in a position to have that view are subject to seizure and may be introduced into evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Dixon, 337 So.2d 1165 (La.1976); State v. Rogers, 324 So.2d 403 (La.1975); State v. Jefferson, 284 So.2d 882 (La.1973). The facts of this case clearly demonstrate that the police officers had a right to arrest defendant and therefore had a right to be standing in a position where they could see the evidence of the crime through the open doors of the getaway car. Our appreciation of the record is that all of the evidence seized could fairly be considered to have been within the plain view of the arresting officers and was therefore lawfully seized and admissible as evidence against defendant at trial on the merits.
Even assuming that some of the articles were not in plain view, we are nevertheless satisfied that their seizure was constitutionally justifiable. One of the widely recognized exceptions to the general prohibition of warrantless searches deals with the search of automobiles and other mobile vehicles. Where probable cause exists for the search of a moving vehicle and circumstances render the securing of a warrant impracticable, a warrantless search of an automobile does not violate the fourth amendment. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 *291 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In the instant case, the suspects' vehicle was stopped on a public street at which time the victim of the offense identified the occupants of the vehicle as the perpetrators of the armed robbery which had taken place less than an hour before. Moreover, at least some evidence of the crime was within the plain view of the officers. Clearly, there was probable cause and exigent circumstances to support the warrantless search of the suspects' vehicle. Hence, the search was not unconstitutional. Chambers v. Maroney, supra; Carroll v. United States, supra; State v. Lain, 347 So.2d 167 (La., 1977); State v. Hollingsworth, 292 So.2d 516 (La.1974); State v. Tant, 287 So.2d 458 (La.1973). The trial judge did not err in denying defendant's motion to suppress the evidence.
Defendant next contends that the trial judge erred in denying his motion to suppress the in-field identifications of defendant by Jerome Squatrito and Doris Robinson. He argues that the identifications were made under circumstances that were unnecessarily suggestive and conducive to irreparable misidentification.
We have recognized that the law does not favor one-on-one confrontations between the victim and a suspect. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Frank, 344 So.2d 1039 (La.1977); State v. Lee, 340 So.2d 1339 (La.1977); State v. Peevy, 321 So.2d 324 (La.1975). On a number of occasions, this court has approved in-field identifications closely associated in time with the criminal transaction. Prompt confrontations have been recognized as promoting fairness by assuring reliability and the expeditious release of innocent suspects. State v. Frank, supra; State v. Lee, supra; State v. Maduell, 326 So.2d 820 (La.1976); State v. Bland, 260 La. 153, 255 So.2d 723 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
In the instant case, both Jerome Squatrito and Doris Robinson were confronted with the suspects within one hour after the commission of the crime. They had ample opportunity to observe the suspects at close range both during and shortly before the robbery. Considering all of the evidence revealed in the record and the absence of any intentionally suggestive conduct by the police, we find that the totality of the circumstances can properly be held to show that the in-field identifications in this case were based on observations made at the time of the offense. The confrontations were neither impermissibly suggestive nor conducive to irreparable misidentification. Accordingly, the trial judge did not err in denying defendant's motion to suppress the identifications of defendant by these witnesses.
In sum, Assignment of Error No. 1 lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his oral motion prior to cross-examination of the robbery victim for state production of mugshots taken of defendant and his companions after arrest. He argues that these photographs would have been useful in impeaching the victim's identification of the accused and that he was entitled to their production under the decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We do not agree.
It is well settled that the prosecution may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or punishment. Brady v. Maryland, supra; United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Robinson, 342 So.2d 183 (La.1977). However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish "materiality" in the constitutional sense. United States v. Agurs, *292 supra. Evidence is considered material and failure to produce it requires reversal of a conviction only if, when considered in the context of the full record, such evidence creates a reasonable doubt that did not otherwise exist. United States v. Agurs, supra.
The record in the instant case simply does not demonstrate that mugshots of the robbery suspects would have in any manner proved exculpatory. It is purely speculative as to whether or not defendant would have been able to successfully use the photographs to impeach the victim's identification of the accused. In fact, the record suggests the contrary. In any event, any minor discrepancies in the victim's identification of the suspects which might possibly have been demonstrated by use of the mugshots during cross-examination would not have created a reasonable doubt as to defendant's guilt in view of the entire record and particularly in view of the physical evidence admitted against him. United States v. Agurs, supra. Clearly, the proposed use of the mugshots was not of "sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Agurs, supra. Accordingly, the requested mugshots did not constitute evidence required to be disclosed under the decisions in Brady v. Maryland and United States v. Agurs.
Assignment of Error No. 2 lacks merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant contends the trial judge erred in dismissing as witnesses Earnest Durand, Jr. and Joseph Smith, Jr., both of whom were jointly charged with defendant in this case but whose trials had been severed from defendant's on motion of the state.
During the presentation of his case, defendant called Earnest Durand and Joseph Smith as witnesses for the defense. Attorneys for the witnesses informed the court that they had advised their clients to assert their fifth amendment privilege against self-incrimination and to refuse to answer any questions which might incriminate them in these proceedings. Each witness invoked his fifth amendment privilege in response to preliminary defense questions. The trial judge asked both co-defendants whether they intended to refuse to answer every question posed on the ground that it might incriminate them because they were also defendants in this case. Each witness responded in the affirmative. Thereupon, the trial judge ruled that the co-defendants had a right to assert the privilege against self-incrimination and excused them as witnesses.
Defendant contends that irrespective of the witnesses' avowed intentions, he had a right to ask his questions and have the witnesses determine whether to answer or refuse to answer each one individually. The state argues that, since the witnesses indicated that they would not respond to the inquiries, the only thing to be gained by posing the questions would be an opportunity for defense counsel to testify to the jury through the phraseology of his questions.
In State v. Berry, 324 So.2d 822 (La.1975), we held that claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination on its assertion. We rejected defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury. In the instant case, defendant did not ask that he be allowed to question the witnesses outside the presence of the jury. Rather, he insisted that he had a right to examine them in open court although they had already personally invoked the privilege against self-incrimination and clearly indicated to the trial judge that they would continue to do so.
La. R.S. 15:275 vests the trial judge with the sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether that examination be direct or cross. Under the circumstances presented herein, the trial judge did not err in excusing as witnesses Earnest Durand and Joseph Smith.
*293 Defendant additionally contends that the state had entered into an off-the-record plea bargaining arrangement with Joseph Smith by virtue of which the charges against Smith were to be dismissed. He argues that, by delaying dismissal of the charge, the state retained a threat against this co-defendant, thereby assuring that he would refuse to testify at defendant's trial concerning the offense. Defendant contends that this practice had the effect of preventing the testimony of a co-defendant who rightfully should no longer have been exposed to prosecution in the case.
In ruling on defendant's argument, the trial judge disclosed that he was not privy to any plea bargain between the state and the codefendants and that so far as the public records were concerned, Joseph Smith was still charged with this offense and therefore had a right to invoke his fifth amendment privilege.
Moreover, the record before us on appeal contains no evidence of the terms or even the existence of the alleged plea bargain at the time Smith refused to testify. Nor is there any indication that the district attorney had reason to believe that the co-defendant's testimony would have been favorable to the accused had he not invoked his fifth amendment privilege. Accordingly, based on the showing made herein, we are unable to review the merits of defendant's contention.[2]
Assignments of Error Nos. 3 and 4 have no merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Joseph Smith, Jr. and Earnest Durand, Jr. were charged in the same information with Willie Williams for the same offense. On motion of the state, the trial judge ordered a severance of the indictment with regard to these two defendants.
[2] Defendant is not precluded from attempting to assert this contention in a post-conviction proceeding.