463 So.2d 830 (1985)
STATE of Louisiana, Appellee,
v.
Lester Leander STRONG, Appellant.
No. 16654-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
Writ Denied April 12, 1985.
*831 Steven R. Thomas, Public Defender, Mansfield, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James L. Davis, Dist. Atty., Herman L. Lawson, Asst. Dist. Atty., Mansfield, for appellee.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro. Tem.
MARVIN, Judge.
In this Crosby appeal, defendant raises four assignments of error after pleading guilty to armed robbery and being sentenced to 20 years at hard labor, without probation, parole, or suspension of sentence, to be served consecutively with "any other sentence imposed." The other sentence is a prior probated and suspended sentence apparently under federal law.
Defendant contends that his motions to suppress out-of-court and in-court identification of him and his confession to policemen should have been sustained and that the trial court should not have ruled admissible a letter that he wrote to his wife. He also contends that the trial court erred in making the sentence consecutive to the probated sentence which had not been revoked. We affirm the conviction, vacate the sentence, and remand.

FACTS
Defendant drove to a drive-in window of a bank teller, Ms. Lee, pointed a pistol at her and robbed her of about $9,000 belonging to the Logansport Bank. The robbery occurred about 9:35 a.m. She described defendant to police as being about 60 years old, having a "sunken in" cheek and "protruding jaw," and as wearing a cowboy hat and glasses. She described his automobile, *832 the first three digits and troop letter of the Louisiana license, and the fact that the car had an "Adams Ford" sticker on it.
Ms. Johnson, another Logansport citizen who knew defendant by name, sight, residence and automobile, saw him driving into the bank parking lot about 9:30 a.m. After she heard the bank was robbed, she returned there with a niece of defendant and learned of the description of defendant and the car and its license plate from Ms. Lee. About 15 minutes after learning about the robbery, Ms. Johnson drove by defendant's home, saw the automobile and "matched" the license digits to the three digits given her by Ms. Lee.
Ms. Lee said defendant made no attempt to disguise himself and was looking at her "full in the face." Ms. Lee and Ms. Johnson testified at the preliminary hearing and identified the defendant.
A deputy sheriff who was informed of these occurrences was immediately dispatched to defendant's home. There he told defendant that he was looking for a car of the description and license number similar to defendant's car which was parked nearby in full view. Defendant was then given Miranda warnings and permitted the deputy to search the car. Five .38 caliber bullets were found in the glove compartment. A paper sack containing a felt cowboy hat was found in bushes nearby. The motor of the car was "hot" to the deputy's touch.
The deputy took defendant's picture with a camera (of the polaroid type) which instantly reproduced a photograph of defendant standing outside his residence. In about two hours this photo was included in a lineup with other photographs of persons of similar appearance and was shown to Ms. Lee. Within 30 seconds, Ms. Lee identified defendant as the robber and said that she was sure of her identification. Apparently Ms. Johnson was not shown the photographic lineup.
Defendant contends the photographic lineup was tainted because defendant's photograph was the only one that was an "outside" picture and was not of the same type as the other photographs. Even should we assume that the photo lineup was "tainted," which we do not, the identification at the preliminary hearing may still be upheld as not violative of due process and fairness. State v. Jones, 457 So.2d 110 (La.App. 2d Cir.1984); State v. Davis, 407 So.2d 702 (La.1981).
Ms. Johnson identified the defendant, who was known to her. Ms. Lee had ample opportunity to view the defendant "full face" during the daylight robbery and said she was paying "close attention" (evidenced by her describing the car, license plate, dealer sticker, as well). Her description was accurate, she was "sure" of her identification at the preliminary hearing and when she viewed the photographs a few hours after the robbery. Defendant has a distinctive face for a 63-year-old man. His cheeks are "sunken," his jaw does "protrude." We find there was no substantial likelihood of misidentification and agree that the trial court correctly overruled the motion to suppress.

ASSIGNMENT NO. 2
Defendant confessed, both verbally and in writing, after receiving Miranda warnings several times and immediately before the confessions to an FBI agent and his federal probation officer. These officers squarely denied defendant's testimony that they promised him and induced him to believe that if he confessed he would be prosecuted exclusively in the federal, and not in the state, court. LRS 15:451.
We find no error in the trial court's overruling the motion to suppress the confessions. Questions of fact and credibility were presented and the record supports the trial court's disposition. Compare State v. Richey, 364 So.2d 566 (La.1978).

ASSIGNMENT NO. 3
After defendant was incarcerated, he wrote, but did not sign, a letter to his wife in which he told her where the money and the pistol were, and how to get others to fabricate a story, and how to cover up her efforts to conceal her use of the money and *833 to further hide the pistol. After receiving the letter, defendant's wife voluntarily telephoned the sheriff's office and gave the letter to a deputy. Apparently, neither the pistol nor the stolen money was found.
A motion to determine pre-trial, the admissibility of this letter was presented to the trial court by the prosecutor. Defendant was aware of the State's possession of the letter but was not made aware of an expert handwriting comparison until the hearing was held. He complains, among other things, that the State did not comply with CCrP Art. 718, that the State failed in its burden of showing that defendant wrote the letter, and that, in any event, the letter was a privileged husband and wife communication. LRS 15:461.
Defendant knew of the existence of the letter and of the State's intention to submit it to a handwriting expert. The State formally agreed, in its answer to defendant's discovery motion, to allow defendant to inspect, copy, photograph, or otherwise reproduce any of the items the State had in its possession. The State essentially obeyed CCrP Art. 718 and could not have been compelled to reveal how it may have intended, if at all, to use the letter at a trial. State v. Hooks, 421 So.2d 880 (La.1982).
Defendant's second complaint attacks the competency of the handwriting expert. The trial court was not clearly wrong in accepting as an expert a person who had completed an 18-month basic course of instruction, who had been certified in Texas since 1980, and who had kept abreast of studies in handwriting analysis since that time. State v. Russell, 434 So.2d 460 (La.App. 2d Cir.1983), writ denied.
LRS 15:461 grants the husband and wife confidential privilege to "private conversations" between them. This language has remained unchanged since 1928. Other statutory confidential privileges protect "communications" between a person, his lawyer, his physician, and his priest or minister. See LRS 15:475-477. A letter from an incarcerated husband to his wife, voluntarily surrendered by the wife to police, is not within the meaning of a confidential "private conversation." State v. Fuller, 454 So.2d 119 (La.1984). We find no error in the trial court's ruling, pre-trial, that the letter was admissible.

ASSIGNMENT NO. 4
We must agree with defendant that the trial court was without authority to make the 20-year sentence consecutive with any other sentence to be served (presumably the probated sentence which had been levied in 1972 by a federal court which had not been revoked). CCrP Art. 901C(2). That determination must be made in a revocation hearing by the court that imposed the probated sentence. State v. Ester, 436 So.2d 543 (La.1983); State v. Rowlins, 463 So.2d 829 (La.App. 2d Cir.1985). Compare CCrP Arts. 900, 901, 883.

DECREE
Defendant's conviction is AFFIRMED.
The sentence is vacated and defendant is remanded to the trial court for resentencing.