594 So.2d 1054 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Clifton A. HARMON, Defendant-Appellant.
No. Cr-91-486.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
*1056 Alcide J. Gray, Ulysses Gene Thibodeaux, Louis E. Buatt, Lake Charles, for defendant-appellant.
Julie Cullen, Asst. Atty., Gen., Baton Rouge, for plaintiff-appellee.
Before DOMENGEAUX, C.J., STOKER, J., and MARCANTEL,[*] J. Pro Tem.
*1057 BERNARD N. MARCANTEL, Judge Pro Tem.
This appeal presents the issue of whether defendant was properly convicted and sentenced for attempted possession of cocaine with intent to distribute and attempted possession of marijuana with intent to distribute.
Clifton A. Harmon (hereinafter defendant) was arrested on August 18, 1989 as a result of a "reverse sting operation" conducted by the Calcasieu Parish Sheriff's Office. The defendant was indicted on September 7, 1989 by a grand jury for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute.
Defendant filed numerous pretrial motions in this case and, among them was a Motion to Suppress seized evidence, which motion was denied after a hearing on April 20, 1990. Subsequently, a jury trial was held and the jury returned a verdict of guilty of attempted possession of cocaine with intent to distribute and attempted possession of marijuana with intent to distribute. On February 6, 1991, defendant was sentenced to serve ten years in the custody of the Department of Corrections on each count. These sentences were ordered to run concurrent to one another, but consecutive to any sentence rendered in Texas against defendant.
Defendant appealed, assigning seven assignments of error. In brief defendant elected to address only assignments of error numbers 1, 4, 6 and 7; therefore, the remainder of the assignments are considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.

FACTS
In August, 1989, the Calcasieu Parish Sheriff's Office conducted a "reverse sting" narcotics operation in which the Sheriff's Office enlisted the aid of a confidential informant who had previously established contact with defendant while the informant was incarcerated in the Calcasieu Parish Jail. At that time, defendant had initiated a relationship with the informant for the purpose of purchasing a large quantity of narcotics when the informant was released from jail. After the informant made bail, he notified the authorities of the Sheriff's Office of his relationship with defendant and the reverse sting operation was implemented in an attempt to secure evidence sufficient for arrest and prosecution.
As part of the sting operation, the informant was set up in a hotel room at the Lake Charles Downtowner and his actions and conversations were monitored by Sheriff's deputies through surveillance, body wire transmissions and telephone recordings. Defendant and the informant agreed that the informant would supply defendant with approximately 50 pounds of marijuana and approximately 1 pound of cocaine. The contraband to be used in the operation was acquired by the Sheriff's Office. On August 18, 1989, the contraband was taken to the informant's hotel room and arrangements were made for defendant to bring a portion of the buy money to the hotel room and approve the contraband. That evening, defendant viewed and approved the narcotics intended for sale in the hotel room and then led the informant to his car in the parking lot and there he exhibited to the informant approximately $12,000.00 in cash which was a portion of the "buy money." The informant was next instructed by defendant to follow him to an unknown location where the transfer was to take place.
When the two vehicles driven by defendant and the informant attempted to leave the parking lot, they were stopped by the Sheriff's deputies. When defendant was asked to exit his vehicle, the officers observed a blue Crown Royal bag containing cash on the floor of his vehicle. The officers seized the bag of cash from defendant's vehicle and the narcotics which were located in the informant's vehicle. The defendant was placed under arrest at the scene and taken to the Sheriff's Office.

*1058 ASSIGNMENT OF ERROR NUMBER 1
Defendant contends in assignment of error number 1 that the trial court erred in denying his motion to suppress the evidence seized from his automobile on the night of August 18, 1989. Defendant claims that a blue Crown Royal bag containing monies was seized as a result of a warrantless search of his automobile and that the State can avail itself of no generally accepted exception to the warrant requirement because of the lack of exigent circumstances and, therefore, the evidence is inadmissible.
The Fourth Amendment of the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution protect a person's reasonable expectation of privacy even while that person is within his automobile. Both the federal and state constitutions prohibit unreasonable searches and seizures and a warrantless search and seizure is presumed to be unreasonable. State v. Thucos, 390 So.2d 1281 (La.1980). In order to justify a warrantless search, the State must show that the search falls within one of the narrowly drawn exceptions to the warrant requirement. State v. Barrett, 408 So.2d 903 (La.1981). In this case, the State cites the well established exceptions for property in plain view and vehicle searches in support of the search of defendant's car and the seizure of the evidence found therein.
A plain view inspection is deemed to be constitutionally permissible because it is not considered to be an actual search. The prerequisites for a legitimate plain view seizure are: (1) there is a prior justification for police intrusion into a protected area; (2) the evidence is discovered inadvertently; and (3) it is immediately apparent without close inspection that the items are evidence of contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Rodriguez, 396 So.2d 1312 (La.1981). We find that the three requirements for a valid plain view seizure were satisfied in this case.
The first requirement of a prior justification for intrusion is met because the officers involved had reasonable cause to stop the vehicle driven by defendant. La. C.Cr.P. Art. 215.1 provides that a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense. Reasonable cause for a investigatory stop is something less than probable cause for an arrest. It requires the detaining officer to have articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Even if the initial stop of defendant was deemed an arrest, the requisite probable cause is satisfied by the facts on the record. Probable cause has been held to mean a fair probability that contraband or evidence of a crime will be found. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
The record reflects that the Sheriff's deputies learned of defendant's intentions to purchase narcotics through their informant. Through the use of telephone recordings, body wire transmissions and statements by the informant, the deputies knew that defendant went to the informant's hotel room with "buy money" to inspect the narcotics which were to be purchased. After defendant approved the drugs and produced the "buy money," the narcotics team witnessed the informant loading the drugs into his vehicle before following defendant to a designated location for the actual transaction. When the vehicles began to exit the parking lot, they were stopped and defendant was asked to exit his vehicle. Certainly, the deputies had cause to detain defendant at this point.
Once it is established that the deputies were justified in their intrusion into the protected area, it must be determined if the evidence seized was discovered inadvertently. Objects falling within the plain view of a police officer who has a right to be in a position to have that view are deemed to be inadvertently discovered. State v. Williams, 349 So.2d 286 (La.1977). Evidence which was clearly visible through the open doors of a vehicle after the driver was *1059 asked to exit has been held admissible. Williams, supra, at page 290.
In the instant case, the record shows that the evidence seized, the "buy money," was clearly observed by the detaining officers on the floorboard of defendant's vehicle. The bag containing the money was plainly visible through the open car door under the illumination of the interior lights.
The final requirement for a valid plain view seizure is an immediate recognition without close inspection that the item observed is evidence. This requirement has been interpreted as requiring probable cause to associate the evidence found with the criminal activity involved. State v. Burns, 471 So.2d 949 (La.App. 2 Cir.1985).
Once again, the final requirement is satisfied by the facts in the record. Due to the surveillance used by the narcotics team, they were aware that defendant would be in possession of "buy money" when he left the hotel parking lot. When the officers observed a partially opened bag with currency spilling out on the floor of defendant's vehicle, they immediately recognized it as the "buy money" intended to be used in the narcotics transaction. Thus, it was readily apparent that the bag observed was evidence of the suspected criminal activity.
As further support for the warrantless search of defendant's vehicle, the State cites the automobile exception to the warrant requirement. The general automobile exception is based on the premise that automobiles are accorded less protection against warrantless searches due to their inherent mobility and a citizen's lesser expectation of privacy while within their vehicle. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). If there is probable cause to believe a vehicle contains evidence of a crime and exigent circumstances require an immediate search, police officers may search the vehicle without a warrant. State v. Tatum, 466 So.2d 29 (La.1985).
The record reflects that there was probable cause to believe that defendant's vehicle contained evidence of the crimes charged. If exigent circumstances are present, the seizure of the evidence from defendant's car is also admissible pursuant to the automobile exception.
Exigent circumstances have been defined as the impracticality of obtaining a warrant due to the possibility that the car could be moved, either by the occupants if not arrested, or by someone else. An immediate warrantless search is permissible when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Tatum, supra. Such exigent circumstances existed in this case. Defendant was leaving a parking lot when he was stopped and arrested. The evidence of the crimes committed, the money, was plainly visible on the floor of the defendant's vehicle. These circumstances combined to make it impractical to seek a search warrant before seizing the vehicle. This is especially true in light of jurisprudence which holds that, for constitutional purposes, there is no difference between seizing and holding a car before presenting probable cause to a magistrate or carrying out an immediate search without a warrant provided there is probable cause to conduct the search. Tatum, supra.
This court finds that a warrantless search of defendant's vehicle was justified under the plain view exception and the automobile exception. The bag of money seized was properly admitted into evidence at the trial on the merits.
Defendant's final argument on this issue is that, even if the bag was properly seized, its contents were not because a warrant could have been obtained once the bag was in police custody. This argument is rebutted by the facts of the case and the United States Supreme Court's latest case on point.
The testimony of the State's witness established that the contents of the seized bag were readily visible without opening it. Also, even if the bag were considered a closed container, the United States Supreme Court has held that police may search a container located within an automobile and need not hold the container *1060 pending issuance of a warrant if the police have probable cause to believe that the container itself holds evidence. California v. Acevedo, ___ U.S. ___, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).
Based on the foregoing reasons, this court finds that defendant's first assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant contends in assignment of error number 4 that the State failed to prove beyond a reasonable doubt all of the elements of attempted possession of cocaine with intent to distribute and attempted possession of marijuana with intent to distribute. In particular, defendant claims that there was insufficient evidence to prove that he intended to distribute the drugs involved. Defendant also contends that the evidence is insufficient to prove his actual possession of the drugs rather than mere preparation.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the factfinder to weigh the respective credibilities of the witnesses and the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
The first challenged element is defendant's intent to distribute. Defendant asserts that the only evidence admitted to prove this element was the quantity of narcotics involved. Defendant contends that, while quantity can create an inference of intent to distribute, this inference alone is not enough to preclude every other explanation.
The intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981); State v. Segura, 546 So.2d 1347 (La.App. 3 Cir.1989). Several factors from which intent to distribute may be inferred have been enumerated in Louisiana's jurisprudence. Those factors include: (1) that defendant ever distributed or attempted to distribute narcotics; (2) that the narcotics were in a form usually associated with narcotics possessed for distribution to others; (3) that the amount was such as to create a presumption of intent to distribute; (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975). This court finds that the State did present evidence of several of these factors from which defendant's intent to distribute may be inferred.
The most convincing evidence of defendant's intent to distribute is the amount of marijuana and cocaine involved. The Laboratory Report of the Sheriff's office showed that the defendant negotiated to purchase over 50 pounds of marijuana and 482.7 grams of cocaine.
Detective John Fryar, Chief of Detectives for the Sheriff's Office Narcotics Division, was called by the State to interpret how much the narcotics involved would translate into in terms of usage. Detective Fryar testified that the marijuana could make approximately 64,000 marijuana cigarettes, or "joints", and the amount of cocaine would translate into between 1800 and 1900 "lines" for ingestion purposes.
This court has consistently held that intent to distribute can be inferred from the amount of narcotics possessed. State v. Stewart, 465 So.2d 206 (La.App. 3 Cir.1985), writ den., 468 So.2d 571 (La. 1985). If this amount is so large that no other inference is reasonable, then the evidence *1061 is deemed to be sufficient. State v. Williams, 457 So.2d 902 (La.App. 3 Cir. 1984), writ den., 461 So.2d 313 (La.1984). The amount of marijuana and cocaine involved in the instant case supports no other reasonable conclusion than defendant's intent to distribute.
The amount of narcotics present in this case is not the only factor indicating an intent to distribute. Other circumstances surrounding the transaction between the defendant and the informant give rise to a reasonable inference of intent to distribute. First, in defendant's discussions with the informant, he expressed an interest in purchasing a large quantity of drugs and in dealing with the informant again in the future. Additionally, the recorded telephone conversations between defendant and the informant indicated that defendant had previously transacted drug business. Finally, in the recorded telephone conversation between defendant and the informant, defendant expressed his intent to turn the drugs over to his brother-in-law rather than retain them for his personal use.
After viewing the evidence in the light most favorable to the prosecution and considering the facts listed above, any rational trier of fact could have found beyond a reasonable doubt that the essential elements of the crimes of attempted possession of cocaine with the intent to distribute and attempted possession of marijuana with the intent to distribute had been adequately proven.
The State produced sufficient evidence of defendant's conduct beyond mere preparation to purchase narcotics with the intent to sell them. The testimony of the State's witnesses established that defendant initiated contact with the informant in order to transact drugs. Defendant negotiated the details of the proposed deal during recorded telephone conversations and meetings with the informant. Defendant's final act tending toward the accomplishment of his goal was the meeting conducted at the informant's hotel room on the night of August 18, 1989. Defendant drove to the hotel to inspect the narcotics and to show the informant a portion of the "buy money." Defendant then instructed the informant to follow him to a designated location where the actual transfer would take place. The final act was only frustrated when the authorities involved moved in to make the arrest.
When defendant proceeded past the vague negotiation phase of the drug transaction and actually took steps to facilitate its accomplishment, he moved beyond mere preparation and into the attempt stage. The very nature of the attempt offense precludes the final act from being required. Therefore, contrary to defendant's argument, it is of no significance that the actual purchase did not occur.
For the reasons assigned, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 6
Defendant next claims that the trial court erred in ordering his sentence to run consecutively to a pending Texas probation violation sentence. Defendant claims that the trial judge lacked authority to order that defendant's sentence be served consecutively with any term of imprisonment imposed in Texas because only the Texas court could order the term to be consecutive or concurrent.
In the sentencing hearing, the trial judge took notice of the probation imposed upon defendant in Texas. The trial judge then stated that defendant's sentencing term in Louisiana would run consecutive with any term he may receive in Texas.
This portion of the trial judge's sentencing is contrary to the jurisprudence on the issue. It has been held that the decision of whether to run a sentence concurrently or consecutively with a prior probated sentence must be made in a revocation hearing by the court that imposed the prior sentence. State Ex Rel. Brently v. Dees, 388 So.2d 386 (La.1980); State v. Strong, 463 So.2d 830 (La.App. 2 Cir.1985), writ den., 466 So.2d 1300 (La.1985); State v. Rowlins, 463 So.2d 829 (La.App. 2 Cir.1985).
Based upon the cited authority, defendant's sixth assignment of error has merit. The trial court erred in ordering defendant's *1062 sentence to run consecutively with any sentence imposed as a result of defendant's probation violation in Texas.

ASSIGNMENT OF ERROR NUMBER 7
Defendant's final contention is that the sentence imposed upon him is excessive. The specific errors alleged are the trial judge's failure to consider mitigating factors, his failure to individualize the sentence and his consideration of the community drug problem as a whole, thereby punishing the defendant for another's crime.
Defendant was convicted of attempted possession of cocaine with intent to distribute and attempted possession of marijuana with intent to distribute. The record does not reveal whether these convictions were based upon La.R.S. 14:27 and La.R.S. 40:966(A)(1), La.R.S. 40:967(A)(1), or La. R.S. 40:979. However, the distinction is of no moment to the issues presented on appeal because the statutory sentencing scheme is the same under both. These offenses each carry a maximum statutory penalty of imprisonment at hard labor for not more than fifteen years and a fine of not more than $7,500.00. Defendant was sentenced to serve ten years on each charge, to run concurrently. Clearly, this sentence is within the permissible statutory limits. Nevertheless, the sentence imposed must be analyzed under the provisions of La.C.Cr.P. Art. 894.1 so that it is not deemed constitutionally excessive. State v. Robicheaux, 412 So.2d 1313 (La.1982).
La.C.Cr.P. Art. 894.1 C provides that the court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. The article establishes procedures designed to adapt the sentence to the offender as well as the offense. This accomplishes the purpose of individualizing the sentence and providing a basis for challenge on appeal. State v. Sepulvado, 367 So.2d 762 (La. 1979).
The factors supporting a sentence of imprisonment include an undue risk that defendant will commit another crime, defendant is in need of correctional services provided by an institution, or a lesser sentence will deprecate the seriousness of the crime. La.C.Cr.P. Art. 894.1 A(1), (2), (3). The statute also sets out eleven factors favoring suspension of sentence or probation, though it provides that these factors do not control the discretion of the court. La. C.Cr.P. Art. 894.1 B(1) through (11). In addition, Art. 894.1 has also advocated consideration of defendant's prior criminal record, the seriousness of the crime, the circumstances of the offense, the likelihood that defendant will commit another crime, and his potential for rehabilitation. State v. Frank, 344 So.2d 1039 (La.1977).
This court finds that the trial judge adequately complied with the guidelines of Art. 894.1.
In his reasons for sentencing, the trial judge considered letters written on behalf of defendant as a mitigating factor. The trial judge took notice of the recommendations of the letters but felt that these positive aspects were overshadowed by the various writers' apparent ignorance of defendant's prior criminal record. The trial judge considered defendant's prior criminal record as an aggravating circumstance, in particular, defendant's felony conviction for theft and his current probationary status as a result of drug related offenses in Texas.
Finally, the trial judge individualized the sentence imposed on defendant by considering the factual evidence of the instant case. Specific mention was made of the quantity of drugs involved and the defendant's apparent intent to distribute them throughout the community.
Although the trial judge did not articulate every aggravating and mitigating circumstance, the jurisprudence has not rigorously applied such a stringent requirement. If the reasons are sufficiently particular to individualize the sentence to defendant and the record justifies the sentence imposed it will be upheld. State v. Cupit, 408 So.2d 1108 (La.1981); State v. Crawford, 410 So.2d 1076 (La.1982).
Defendant's last argument against the sentence imposed is that the sentence was based on the consideration of the community *1063 drug problem, thus punishing him for another's crime. The trial judge only briefly discussed this topic when he stated, "Certainly, the drug problem is rather prevalent, and Mr. Harmon was a substantial contributor, or was going to be a substantial contributor to that problem in this area, and the Court takes that into consideration." Louisiana jurisprudence has held that it is not improper to consider larger societal concerns if the sentence is particular to the defendant. State v. Ray, 423 So.2d 1116 (La.1982); State v. Davis, 511 So.2d 91 (La.App. 3 Cir.1987).
After reviewing the record, the circumstances of the offense, and the considerations explained by the trial judge, we find that the sentence imposed is not excessive.
For these reasons, this assignment of error lacks merit.
For the reasons assigned, defendant's sentence is amended to give due deference to the Texas court's authority on probation revocation. That portion of defendant's sentence, ordering it to run consecutively with any sentence imposed in Texas as a result of the violation of defendant's probation in Texas, is vacated. Otherwise, the defendant's conviction and sentence are affirmed.
AMENDED AND AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.